IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., | § § § | |
| Plaintiff/Counter-Defendant, | § § | |
| v. | § § | 1:23-CV-1506-RP |
| DELL TECHNOLOGIES INC. and DELL INC., | § § § § | |
| Defendants/Counter Plaintiffs. | § § | |

**ORDER**

Before the Court is Defendants Dell Technologies Inc. and Dell Inc.'s ("Dell") opposed motion to stay pending *inter partes* review ("IPR"). (Dkt. 46). Plaintiff Universal Connectivity Technologies Inc. ("UCT") filed a response in opposition, (Dkt. 47), and Dell filed a reply, (Dkt. 49). Also before the Court is UCT's opposed motion to sever, (Dkt. 48), to which Dell responded, (Dkt. 50), UCT replied, (Dkt. 53), and, with leave of Court, Dell sur-replied, (Dkt. 66). Having considered the parties' arguments, the record, and the relevant law, the Court will grant Dell's motion to stay the case and deny UCT's motion to sever.

**I. BACKGROUND**

UCT filed its complaint on December 12, 2023, alleging infringement by Dell of eight patents: United States Patent Nos. 7,154,905 ("the '905 Patent"), 7,187,307 ("the '307 Patent"), 7,746,798 ("the '798 Patent"), 9,232,265 ("the '265 Patent"), 8,680,712 ("the '712 Patent"), 7,856,520 ("the '520 Patent"), 7,921,231 ("the '231 Patent"), and 9,852,103 ("the '103 Patent") (collectively, the "Asserted Patents"). (Compl., Dkt. 1). On February 7, 2024, Dell filed a motion to dismiss. (Dkt. 18). This Court referred the motion to dismiss to United States Magistrate Judge Susan Hightower. The Court entered a scheduling order in the case on April 3, 2024. (Dkt. 30). On June 17, 2024,

1

Judge Hightower issued her report and recommendation, (Dkt. 34), and two weeks later, this Court entered an order adopting the report and recommendation and denying Dell's motion to dismiss, (Dkt. 35). On July 16, 2024, Dell filed its answer and counterclaims on UCT. (Dkt. 37).

On October 1 and 2, 2024, Dell filed IPR petitions against seven of the eight Asserted Patents—all patents except the '231 Patent. (Mot. Stay, Dkt. 46, at 2). The PTAB's institution decisions on these petitions are expected in April 2025. (*Id.*). On October 4, Dell filed the instant motion to stay all proceedings in this case until the PTAB concludes these IPRs. (Dkt. 46). UCT filed a response in opposition, arguing that a stay is not warranted. (Dkt. 47). UCT then also filed the instant motion to sever, in which it requests that if the Court is inclined to grant Dell's motion to stay, then the Court should also sever the '231 Patent into its own action and allow that litigation to proceed. (Dkt. 48). Dell opposes UCT's motion to sever. (Dkt. 50). Both parties filed replies on their motions, (Dkts. 49, 53), and Dell filed a sur-reply on UCT's motion to sever, (Dkt. 66).

## II. MOTION TO STAY

The Court begins with Dell's motion to stay pending IPR. District courts generally consider three factors when determining whether to stay a matter in light of IPRs: (1) whether a stay will simplify the issues raised; (2) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; and (3) the status of the litigation at the time the stay is requested. *See Crossroads Sys. v. DOT Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773014, at *2 (W.D. Tex. Jun. 16, 2015).

First, Dell asserts that a stay has a substantial likelihood of simplifying the issues, as the IPR petitions challenge 60 of the 70 claims asserted in this case and the IPRs may simplify claim construction. Second, Dell contends that a stay is warranted because party discovery and claim construction has not begun and trial is more than a year and half away. Third, Dell argues that a stay will not unduly prejudice UCT because UCT is a non-practicing entity that does not compete with

Dell in the marketplace and a stay does not unduly prejudice UCT's ability to collect monetary damages. (Mot. Stay, Dkt. 46, at 3–8).

In response, UCT argues that any potential simplification of the issues is speculative at this stage because the PTAB has not yet instituted IPRs. Second, UCT asserts that the stage of the litigation does not justify a stay because this case was filed over ten months ago; in that time frame, the parties have briefed and the Court has denied a motion to dismiss, third party discovery has been ongoing, the Court has entered a scheduling order, and the parties have begun the claim construction process. Last, UCT contends that a stay will unduly prejudice it because UCT has an interest in the timely enforcement of its patent rights and a multi-year stay risks the loss of testimonial and documentary evidence, namely "source code and/or technical documents" which are in the hands of Dell's third-party suppliers. (UCT Resp., Dkt. 47, at 3–10).

The Court finds that the factors weigh in favor of granting a stay. First, a stay is likely to simplify the issues in this case. Should the PTAB decide to institute IPRs, the issues in this case could be greatly simplified, given that the PTAB could find that 86% of the claims asserted are unpatentable. While Dell has not filed an IPR petition against the '231 Patent, that does not alter the stay analysis because, "[e]ven if only some claims related to only [one of two asserted patents] are resolved [by the IPRs], the number of claims the district court would have to evaluate in determining the issues would be decreased," which "is sufficient to merit a stay." *LS Cloud Storage Techs., LLC v. Google, LLC*, No. 1:22-CV-00853-RP, 2023 WL 5004870, at *2 (W.D. Tex. July 25, 2023); *see also Bell Semiconductor, LLC v. NXP Semiconductors, N.V.*, No. 1:20-CV-611-LY, 2022 WL 1447948, at *2 (W.D. Tex. Feb. 7, 2022) (finding that "the potential resolution of three [out of seven] patent disputes through IPRs would significantly reduce the number of claims that proceed to trial," favoring a stay of the case). Moreover, even if "some of the asserted claims survive [the IPRs], then statements and reasoning by the PTAB may be persuasive as this court construes the parties'

disputed claim terms." *Anza Tech., Inc. v. Avant Tech., Inc.*, No. A-17-CV-01193-LY, 2018 WL 11314191, at *2 (W.D. Tex. Nov. 15, 2018). However, even if the Board decides not to institute IPRs, the case will only have been stayed a matter of months because institution decisions on the Asserted Patents are expected by April 2025, and proceedings can begin again at that time. *See Nobots, LLC v. Google, LLC*, No. 1:22-cv-585-RP, Dkt. 53 (W.D. Tex. July 13, 2022).

Second, the Court finds that a stay will not unduly prejudice UCT. Because UCT does not produce products on its patents nor does it compete with Dell, a stay will not unduly prejudice UCT's interests. *See Bell Semiconductor*, 2022 WL 1447948, at *2. To the contrary, this Court has held that a party's "mere delay in collecting [monetary] damages does not constitute undue prejudice." *Crossroads Sys.*, 2015 WL 3773014, at *2. Further, UCT's vague assertions about the loss of evidence and witnesses "are not sufficient to justify a conclusion of undue prejudice." *VirtualAgility v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014). Moreover, the loss of third-party evidence does not justify a stay because third-party discovery has been open for over six months and UCT already has subpoenas out to third parties, obligating those parties to preserve relevant documents and eliminating any potential concerns about the loss of third-party documentary evidence. On the other hand, if a stay is not granted and claim construction occurs before the IPRs conclude, the Court and the parties could waste valuable resources briefing and resolving claims that ultimately could be invalidated. A delay of a few months while the PTAB determines whether to institute IPRs will not unduly prejudice UCT, nor will a stay pending IPRs unduly prejudice UCT should the PTAB decide to institute IPRs given the likelihood of simplification of issues.

Last, this case is at an early stage of litigation. It is true that the Court has already resolved Dell's motion to dismiss, and the parties have exchanged contentions and preliminary identifications of claim construction terms and extrinsic evidence. However, no further deadlines under the Court's scheduling order have been reached. Claim construction briefing was set to begin in November with

a *Markman* hearing scheduled for January 2025. (Dkt. 30). These deadlines were stayed pending the instant motion to stay. (*See* Order, Dkt. 55). Dispositive motions are not due for over a year, and trial is not scheduled until June 2026. (*Id.*). This early stage of litigation favors a stay. *See, e.g.*, *Bell Semiconductor, LLC v. NXP Semiconductors, N.V.*, No. 1:20-CV-611-LY, 2022 WL 1447948, at *2 (W.D. Tex. Feb. 7, 2022); *Landmark Tech., LLC v. iRobot Corp.*, No. 6:13-cv-411-JDL, 2014 WL 486836, at *3 (E.D. Tex. Jan. 24, 2014) ("Staying a case at an early juncture can advance judicial efficiency and maximize the likelihood that neither the court nor the parties expend their assets addressing invalid claims.") (internal quotation marks and citation omitted).

All three factors favor a stay. Accordingly, this Court grants Dell's motion to stay this litigation pending resolution of Dell's IPRs.

### III. MOTION TO SEVER

Having determined that this case should be stayed pending Dell's IPRs, the Court now turns to UCT's motion to sever. Dell filed IPRs on seven of the eight Asserted Patents in this case. In its motion to sever, UCT asks that the Court sever the eighth patent—the '231 Patent—into a separate action and allow the parties to move forward with the claims related to the '231 Patent according to the current scheduling order. (Mot. Sever, Dkt. 48, at 1).

Federal Rule of Civil Procedure 21 provides that, "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." The decision to deny a motion to sever is committed to the discretion of the district court. *In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012). This discretion is not unbridled, however; it "must be exercised within the boundaries set by relevant statutes and precedent," and a "district court abuses its discretion if it relies on an erroneous conclusion of law." *Id.* Federal Circuit law generally applies to motions to sever in the patent context, but the Federal Circuit often looks to other circuits for guidance. *Id.* at 1354; *see also In re Nintendo Co., Ltd.*, 544 F. App'x 934, 938 (Fed. Cir. 2013). Generally, courts in the

Fifth Circuit consider the following factors when evaluating a motion to sever under Rule 21: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014). The movant "bear[s] the burden in seeking severance under Rule 21." *Glenn v. Murphy*, No. 6:16-CV-357, 2016 WL 11554106, at *4 (W.D. Tex. Dec. 22, 2016), *report and recommendation adopted*, 2017 WL 10841348 (W.D. Tex. Jan. 9, 2017).

UCT argues that severance is justified because UCT's infringement claims related to the '231 Patent stand alone and apart from any of the other seven Asserted Patents. (Mot. Sever, Dkt. 48, at 3). UCT notes that it could have filed separate suits on each of the Asserted Patents and accordingly there is no basis to stay UCT claims as to the '231 Patent even if the claims based on the other seven Asserted Patents are stayed. (*Id.*). UCT asserts that staying the '231 Patent claims would be prejudicial because it harms UCT's interest in the timely enforcement of its patent rights and a multi-year stay risks the loss of third-party evidence. (*Id.* at 4). In response, Dell argues that severance of the '231 Patent claims is not warranted because the '231 Patent infringement claims arise out of the same transaction or occurrence as the other Asserted Patent claims and present common questions of law and fact. (Dell Resp., Dkt. 50, at 2–5). Accordingly, so argues Dell, severance would cause substantial inefficiencies and burden the parties, the witnesses, and the Court by way of costly and duplicative litigation. (*Id.* at 1, 5–6, 8–10). Last, Dell argues that UCT has failed to demonstrate that it would be prejudiced if the Court did not allow severance. (*Id.* at 6–8).

The Court finds that UCT has not carried its burden in seeking severance. First, UCT's '231 Patent claims arise out of the same "transaction or occurrence" as UCT's claims on the other Asserted Patents. The Federal Circuit has held that the "transaction-or-occurrence test" requires a

6

"logical relationship between the claims." *EMC Corp.*, 677 F.3d at 1357–58 (cleaned up). In turn, the "logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise" to each cause of action. *Id.* at 1358. Here, such a logical relationship exists between all UCT's claims because there is significant overlap between the products accused of infringing the '231 Patent and the products accused of infringing the other seven Asserted Patents. (*See* UCT Infringement Contentions, Dkt. 50-1). In other words, there is no category of products that UCT alleges is infringed by the '231 Patent but not infringed by any other Asserted Patents. That means that the same alleged acts of infringement—the sale or use of those Accused Products—gave rise to UCT's causes of action on both the '231 Patent and the other Asserted Patents. Such a "logical relationship" between the claims disfavors severance.

Second, there are some common questions of law and fact between the '231 Patent claims and UCT's claims on the other Asserted Patents. Because UCT's infringement allegations for the '231 Patent overlap with the other Asserted Patents, there will be common questions of fact. *See Gonzales v. Allstate Vehicle & Prop. Ins. Co.*, No. 6:17-CV-00058, 2017 WL 7945689, at *2 (W.D. Tex. Sept. 14, 2017) ("[A]ll the claims arise from the same factual nexus and it is more than likely that the evidence proffered for both will not substantially differ between the two categories of claims."), *report and recommendation adopted*, 2017 WL 4678238 (W.D. Tex. Oct. 17, 2017). Additionally, given the similarities that the '231 Patent shares with the other Asserted Patents, including the '520 Patent, disputed terms are currently being briefed together for claim construction. (*See* Disclosure of Disputed Terms, Dkt. 50-1, at 6, 9 ("mobile device" is a disputed term for construction in the '231 and '520 Patents); *id.* at 6, 7–10 ("logic to…" terms are disputed across the '231 and '520 Patents)). While it is true that some questions of law would differ between the '231 Patent and the other Asserted Patents—as questions of infringement and invalidity would require individual analyses as to

each Asserted Patent—the Court is convinced that "*some* common questions of law or fact exist," *see Rolls Royce*, 775 F.3d at 680 n.40, such that this factor disfavors severance.

Third, severance would impair settlement of the claims and harm judicial economy. Splitting this case into two separate actions on separate schedules will unnecessarily duplicate the efforts demanded of this Court should any claims survive IPR—requiring duplicative discovery, two *Markman* hearings, two pretrial conferences, and two trials. Such duplication would be inefficient to the Court, the parties, witnesses, and jurors that would be required for a second trial. *See Daniels v. AETC II Privatized Hous., LLC*, No. CV SA-19-CA-1280-FB, 2020 WL 6791520, at *2 (W.D. Tex. Nov. 9, 2020) ("[I]n a case such as this—with potentially overlapping discovery issues—judicial economy is best served by maintaining plaintiffs' claims against defendants in a single action."). Moreover, "settlement discussions can be conducted more efficiently within the structure of one lawsuit rather than two." *Gonzales*, 2017 WL 7945689, at *3.

Fourth, the Court has already found that UCT is not unduly prejudiced by a stay of its claims because a party's "mere delay in collecting [monetary] damages does not constitute undue prejudice." *Crossroads Sys.*, 2015 WL 3773014, at *2. Further, UCT's vague assertions about the loss of evidence is "not sufficient to justify a conclusion of undue prejudice." *VirtualAgility*, 759 F.3d at 1319. On the other hand, given that severance would require duplicative litigation efforts that would prejudice the Court, Dell, witnesses, and jurors, prejudice would not be avoided if severance were granted.

Last, overlapping witnesses and duplicative evidence are required for all UCT's claims. The '231 Patent itself overlaps in both substance and inventors with other patents asserted by UCT. For example, the '231 Patent and the '520 Patent include a common inventor: Shrikant Ranade. Two other inventors on the '231 Patent are also inventors on the '103 Patent. Additionally, the '231 Patent and the '520 Patent deal with similar technology. (Dell Resp., Dkt. 50, at 8–9). The overlap in

8

inventors and substance of UCT's Asserted Patents means that there will be overlap between the witnesses and documentary evidence that Dell will seek from UCT. (*See, e.g.*, Dell's 1st Supp. R. 26 Initial Disclosures, Dkt. 50-3, at 6–18 (identifying at least ten specific individuals and entities with knowledge relevant to the '231 Patent and also at least one other asserted patent)). Likewise, because UCT's infringement allegations for the '231 Patent overlap with its infringement allegations for the remaining patents, there will also be overlap in the documentary evidence and witnesses that UCT will seek from Dell. *See Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, 2012 WL 4442368, at *3 (N.D. Tex. Sept. 26, 2012) ("Because the [claims] arise out of a series of transactions that are similar and logically related, it is likely that the evidence will not substantially differ between the two categories of claims."). Last, there will also likely be overlapping experts on at least the issues of infringement, invalidity, and damages. Because the '231 Patent "will entail soliciting similar witnesses and requiring production of similar documentary proof" as the remaining Asserted Patents, "this factor weighs against severance." *Gonzales*, 2017 WL 7945689, at *3.

Because all five of the factors identified by the Fifth Circuit in *Rolls Royce* disfavor severance, the Court finds that UCT has not carried its burden in seeking severance. Accordingly, the Court denies UCT's motion to sever. UCT's claims based on the '231 Patent will remain in this litigation and will be stayed pending resolution of IPRs on the other Asserted Patents.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Dell's opposed motion to stay pending IPR, (Dkt. 46), is **GRANTED**.

**IT IS FURTHER ORDERED** that UCT's motion to sever, (Dkt. 48), is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **STAYED** in its entirety pending further order of the Court until Dell's IPRs are resolved.

**IT IS FINALLY ORDERED** that the parties shall file quarterly status reports apprising the Court of the status of the IPRs, with the first status report due on or before **March 12, 2025**.

**SIGNED** on December 12, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE