**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

UNIVERSAL CONNECTIVITY
TECHNOLOGIES INC.

                 Plaintiff,

  v.

DELL TECHNOLOGIES INC. and
DELL INC.,

                 Defendants.

CASE NO. 1:23-cv-01506-RP

**JURY TRIAL DEMANDED**

## DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.      Agreed Constructions ........................................................................................1

II.     Disputed Terms .................................................................................................1

        A.      The "logic to" terms are indefinite ('520 and '231 Patents). ...................1

                1.      "logic to discover" / "logic to detect" terms ('231 Patent, claims 10, 16, and dependents) ............................................................2

                2.      "logic to convert" ('520 Patent, claims 12, 19, and dependents) .................3

                3.      "logic to arbitrate" ('520 Patent, claims 12, 19, and dependents) .............6

        B.      "a preemption component" ('905 Patent, claim 21) .................................7

                1.      "Preemption component" is a means-plus-function term ...........................7

                2.      The '905 Patent does not disclose adequate corresponding structure........10

        C.      "identification component" ('798 Patent, claim 19 and dependents) ...................11

        D.      "application data and control bits" ('307 Patent, all asserted claims) ..................11

        E.      "AV sink operation mode" and "AV source operation mode" ('265 Patent, all claims)...............................................................14

        F.      "mobile device" ('520 Patent, all claims and '231 Patent, claim 14)....................15

        G.      "standard protocol" / "modified protocol" ('520 Patent, all claims) ....................16

        H.      "the modified protocol being a modification of the standard protocol that is not included in the standard protocol" ('520 Patent, all claims)................................17

        I.      "first physical channel" ('103 Patent, all claims) ..................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
659 F.3d 1121 (Fed. Cir. 2011)............................................................................12

*ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*,
346 F.3d 1075 (Fed. Cir. 2003)............................................................................20

*Atmel Corp. v. Info. Storage Devices, Inc.*,
198 F.3d 1374 (Fed. Cir. 1999)..............................................................................2

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)............................................................................20

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
713 F.3d 1090 (Fed. Cir. 2013)............................................................................20

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
115 F. App'x 84 (Fed. Cir. 2004) ...........................................................................4

*Cloud Farm Assocs. LP v. Volkswagen Grp. of Am., Inc.*,
674 F. App'x 1000 (Fed. Cir. 2017) .....................................................................13

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
412 F.3d 1291 (Fed. Cir. 2005).....................................................................3, 4, 5

*E2E Processing, Inc. v. Cabela's Inc.*,
2015 WL 4051423 (E.D. Tex. July 2, 2015) ........................................................10

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
673 F. 3d 1361 (Fed. Cir. 2012)..............................................................................4

*Fin Control Sytems Pty, Ltd. v. OAM, Inc.*,
265 F.3d 1311 (Fed. Cir. 2001)............................................................................13

*Fractus, S.A. v. AT&T Mobility LLC*,
No. 2:18-CV-00135-JRG, 2019 WL 1641357 (E.D. Tex. Apr. 16, 2019) ...............6

*Helmsderfer v. Bobrick Washroom Equipment, Inc.*,
527 F. 3d 1379 (Fed. Cir. 2008)...........................................................................12

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
649 F.3d. 1350 (Fed. Cir. 2011)..............................................................................9

*Koninklijke Philips N.V. v. Zoll Med. Corp.*,
   656 F. App'x 504 (Fed. Cir. 2016) ...................................................................18

*Lucent Techs., Inc. v. Gateway, Inc.*,
   525 F.3d 1200 (Fed. Cir. 2008)........................................................................7

*Markman v. Westview Instruments, Inc.*,
   517 US 370 (1996)...........................................................................................1

*Media Rights Technologies, Inc. v. Capital One Financial Corp.*,
   800 F.3d 1366 (Fed. Cir. 2015)..............................................................8, 9, 10

*Medical Instrumentation and Diagnostics Corp. v. Elekta AB*,
   344 F. 3d 1205 (Fed. Cir. 2003)........................................................................3

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 US 898 (2014)........................................................................................6, 7

*Noah Sys., Inc. v. Intuit Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012).................................................................3, 4, 8

*O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co.*,
   521 F. 3d 1351 (Fed. Cir. 2008)......................................................................15

*OI Corp. v. Tekmar Co. Inc.*,
   115 F. 3d 1576 (Fed. Cir. 1997)....................................................................7, 8

*PC Connector. Cellspin Soft, Inc. v. Fitbit, Inc.*,
   No. 17-CV-05928-YGR, 2021 WL 1417419 (N.D. Cal. Apr. 14, 2021) ...............16

*PC Connector Sols. LLC v. SmartDisk Corp.*,
   406 F.3d 1359 (Fed. Cir. 2005)......................................................................16

*Personalized Media Commc'ns, LLC v. I.T.C.*,
   161 F.3d 696 (Fed. Cir. 1998).......................................................................8, 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..........................................................6, 11, 12, 18

*Polaris PowerLED Techs., LLC v. Dell Techs., Inc.*,
   No. 1:22-CV-973-RP, 2025 WL 2182327 (W.D. Tex. Mar. 4, 2025)...................19

*Poly-Am., L.P. v. API Indus., Inc.*,
   839 F.3d 1131 (Fed. Cir. 2016)..................................................................13, 17

*Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*,
   989 F.3d 1002 (Fed. Cir. 2021)......................................................................10

*Rodime PLC v. Seagate Tech., Inc.*,
    174 F.3d 1294 (Fed. Cir. 1999)..................................................................................13

*Salazar v. Procter & Gamble Co.*,
    414 F.3d 1342 (Fed. Cir. 2005)..................................................................................19

*Seachange Intern., Inc. v. C-Cor, Inc.*,
    413 F. 3d 1361 (Fed Cir 2005)....................................................................................13

*Sorensen v. Int'l Trade Comm'n*,
    427 F.3d 1375 (Fed. Cir. 2005)..................................................................................19

*Sunstone Info. Def., Inc. v. F5, Inc.*,
    No. 21-CV-09529-YGR, 2023 WL 2746762 (N.D. Cal. Mar. 30, 2023),
    appeal dismissed, No. 2023-2091, 2025 WL 798860 (Fed. Cir. Mar. 13, 2025) .....................1

*TecSec, Inc. v. Int'l Bus. Machines Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013)................................................................................7, 8

*The PACid Grp., LLC v. Apple, Inc.*,
    No. 6:09CV143-LED-JDL, 2010 WL 2813654 (E.D. Tex. July 15, 2010)...........................17

*Uship Intellectual Properties, LLC v. US*,
    714 F. 3d 1311 (Fed. Cir. 2013)..................................................................................14

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015)....................................................................................2

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
    442 F. 3d 1322 (Fed. Cir. 2006)..................................................................................11

**Statutes**

35 U.S.C. § 112(6) .......................................................................................... *passim*

**TABLE OF EXHIBITS**[1]

| EXH. | DESCRIPTION |
|------|-------------|
| 43 | Complete copy of UCT's patent owner preliminary response to the petition for *inter partes* review of the '307 Patent in *HP Inc. et al. v. Universal Connectivity Technologies Inc.*, IPR2024-01429 (Paper 8) (excerpts previously filed as Ex. 14 to Dell's Opening Claim Construction Brief). |
| 44 | August 2025 e-mail correspondence between counsel for Dell and counsel for UCT regarding disputed terms for briefing. |

---

[1] Appendix B lists agreed constructions (*see* Appendix B-1) and constructions of remaining disputed terms addressed in the briefing (*see* Appendix B-2).

Departing from its original disclosures, UCT now urges the Court to adopt the claim construction order in *Universal Connectivity Techs. Inc. v. Lenovo Group Limited,* No. 2:23-cv-00449-JRG (E.D. Tex.) ("EDTX Order"). Dkt. 79 at 1. The Court is not bound by the EDTX Order and, indeed, "has an independent obligation to construe the claims in dispute, and to render its own independent claim construction." *Sunstone Info. Def., Inc. v. F5, Inc.*, No. 21-CV-09529-YGR, 2023 WL 2746762, at *3 (N.D. Cal. Mar. 30, 2023), appeal dismissed, No. 2023-2091, 2025 WL 798860 (Fed. Cir. Mar. 13, 2025). As explained below, the EDTX constructions are incorrect as a matter of law and the Court should decline to adopt them. Any resulting inconsistency can be resolved by the Federal Circuit.[2] *See Markman v. Westview Instruments, Inc.*, 517 US 370, 390-91 (1996) (Federal Circuit provides uniformity in matters of patent law, such as claim construction).

## I.    Agreed Constructions

The parties now agree that "the transmitter to drive a first signal value on the control bus periodically upon transitioning to the pending state" ('231 Patent, claim 10 and dependents) should be construed as "the transmitter to drive a first signal value on the control bus in regular, repeated cycles upon transitioning to the pending state." Dkt. 79 at 28.

UCT no longer asserts claim 17 of the '103 patent in view of the EDTX Order finding it indefinite. *Id.* at 30. This Court should also find claim 17 indefinite because Dell pled a counterclaim for invalidity and UCT offers no substantive response to Dell's brief.

## II.    Disputed Terms

### A.    The "logic to" terms are indefinite ('520 and '231 Patents).

UCT no longer disputes that "logic to" is means-plus-function under 35 U.S.C. § 112(6);

---

[2] Inconsistency likely cannot be avoided in any event, as the Northern District of California is also currently considering many of the same disputes in UCT's separate case against HP.

instead, it urges the Court to adopt the EDTX Order's finding that these *are* means-plus-function terms and its selection of corresponding structure. UCT has not previously argued that the patents disclose the structure recited in the EDTX constructions, and it offers no expert opinion to support those constructions or rebut the opinion of Dell's expert that these terms are indefinite. Because the EDTX Order's corresponding structure findings are incorrect as a matter of law and UCT does not identify any alternative structure, these terms are indefinite.

### 1. "logic to discover" / "logic to detect" terms ('231 Patent, claims 10, 16, and dependents)

Dell agrees that "logic to detect signals on the cable interface" (claim 10) and "logic to discover a transmitting device coupled with the receiving device" (claim 16) rise and fall with their component "first logic to detect…" and "second logic to detect…" limitations. The '231 Patent does not describe any structure—much less *adequate* structure—to perform the claimed functions of the "first/second logic to detect" terms, and they are indefinite. *See* Dkt. 77 at 7-11.

UCT now argues, for the first time, that the corresponding structure is a "voltage detector" located within a transmitter or receiver and connected to a power bus or control bus.[3] Because the '231 patent never mentions nor illustrates a voltage detector, it cannot be corresponding structure under § 112, ¶ 6. *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999) ("Fulfillment of the § 112, ¶ 6 tradeoff cannot be satisfied when there is a total omission of structure. There must be structure in the specification."); *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015). Every patent excerpt cited by UCT relates at most to a "transmitter" or "receiver," which are recited as claim elements separate from the "logic to detect" and which UCT does not argue are corresponding structures. Instead, it relies on the EDTX Order's

---

[3] Prior to the EDTX Order, UCT never identified a "voltage detector" as structure corresponding to this limitation. *See, e.g.,* Dkt. 77, Appx. A at 9-12.

speculation that a "skilled artisan would understand" that the transmitter and receiver might include voltage detectors. Dkt. 79-2 at 32-35. There is no evidence to support that conclusion[4] and, regardless, the knowledge of a POSITA cannot "supplant the total absence of structure from the specification." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005); *see also Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F. 3d 1205, 1212 (Fed. Cir. 2003). In *Default Proof*, the Federal Circuit found a § 112(6) term indefinite because "the specification disclose[d] no structure capable of" performing the function and the plaintiff relied on conclusory expert testimony, which "cannot compensate for such lack of disclosure." 412 F.3d at 1302. Here, the specification does not disclose a voltage detector (and certainly not one with the specific connections required by UCT's proposed construction) and UCT offers ***no expert testimony*** on this term. Dell's expert opined that the '231 patent does not disclose adequate corresponding structure anywhere, much less within the transmitter/receiver or connected to the power/control buses. Dkt. 77-8 at ¶¶ 216-27, 237-47, 269-79, 291-302. Those detailed opinions stand unrebutted, and it would be legal error to adopt UCT's proposed construction which has neither intrinsic nor extrinsic support.

### 2. "logic to convert" ('520 Patent, claims 12, 19, and dependents)

The "logic to convert" terms are also indefinite for lack of corresponding structure. For the first time in its responsive brief, UCT proposes that the structure of each is "a general-purpose processor, special-purpose processor, or logic circuit programmed to" perform an algorithm. Both algorithms are legally insufficient, because one merely restates the claimed function and the other is not disclosed in the specification. *Noah Sys., Inc. v. Intuit Inc.*, 675 F. 3d 1302, 1316–17 (Fed.

---

[4] For example, UCT's expert does not opine that a voltage detector is corresponding structure or that a POSITA would understand the '231 Patent to disclose a voltage detector.

Cir. 2012); *Default Proof*, 412 F.3d at 1300-02.

As to claim 12, which recites a "logic to convert" within a "transmitting device," the purported structure in UCT's construction merely replaces the claimed function ("***convert*** . . . control signals into a data packet") with a synonymous function ("***form*** control signal bytes into data packets…"). *Noah Sys.*, 675 F. 3d at 1317 ("simply restat[ing] the function associated with the means-plus-function limitation, is insufficient" structure). That cannot be a sufficient algorithm for § 112(6) because it lacks the required step-by-step procedure. *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F. 3d 1361, 1365 (Fed. Cir. 2012). The remainder of UCT's construction does not resolve this fatal flaw, because it merely adds window dressing about the "control signals" ("control signal ***bytes***") and "data packets" (they include a "header field" and "control field"). Those are details about signals and packets; they do not describe the structure of a "logic to convert" from one to the other.[5] *See, e.g.,* Dkt. 77-8, ¶¶ 115, 132. Even if the structure of a packet itself were sufficient (it is not), UCT's construction would fall short because it does not include the ***entire*** structure of the disclosed packet or its bits. *See* Dkt. 77-5 at Fig. 8 (packet includes fields "1-Bit Sync," "2-Bit Header," "1-Bit Control," "8-Bit Data," "1-Bit Parity," and "1-Bit ACK") and Fig. 9 (illustrating the allowed bit combinations in the header field and their meaning); *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 115 F. App'x 84, 88 (Fed. Cir. 2004) ("[T]he corresponding structure . . . is the entire structure that" performs the function.).

As to claim 19, which recites a "logic to convert" within a "receiving device," UCT proposes an algorithm comprising two "identifying" steps. But neither the EDTX Order nor UCT

---

[5] UCT's new construction incorporates additional details about the control signals and data packet as part of the proposed function. The specification does not disclose the structure of a "logic to convert" ***any*** control signals into ***any*** data packets and, as Dell's expert opined, these additional details do not alter the indefiniteness analysis. *See* Dkt. 77-8, ¶¶ 115, 130.

identifies any disclosure of these steps in the patent (there is none), and they thus cannot provide adequate structure corresponding to the "logic to convert." *Default Proof*, 412 F.3d at 1300-02. Instead, UCT bases its construction on two statements in the EDTX Order about how "the **transmitter** uses" data packet fields (Dkt. 79 at 8), which (a) are not statements from the patent and (b) cannot describe structure corresponding to the "logic to convert" of claim 19 that is part of a **receiving device**. Moreover, the cited part of the EDTX Order discusses Fig. 9, which illustrates specific bit values **within a data packet**—not any structure of the logic that converts such data packets into control signals.

UCT has no expert testimony to support its constructions; it merely argues that Figs. 8 and 9 disclose structure for the "logic to convert." Dkt. 79 at 7-8. But the EDTX Order and Dell's expert agree that Fig. 8 and 9:16-37 disclose only a packet that is "the **result** of the conversion" (Dkt. 79-2 at 26 (emphasis added); Dkt. 77-8, ¶ 132), and Fig. 9 merely illustrates more details of that packet (Dkt. 77-4 at 2:25-28). The remaining patchwork of '520 patent excerpts cited by UCT and in the EDTX Order offer no support. Fig. 7 and 3:11-17 describe only background information about "the underlying problem." Dkt. 79-2 at 24-25. Dell's expert explained that: 7:29-39 is at most an insufficient restatement of the claimed function (Dkt. 77-8, ¶¶ 131, 133, 145); 1:65-2:1, 3:34-37, 7:28-38, and 7:42-47 merely restate the claimed **function** (*id.*, ¶¶ 145, 149-152); and 10:4-9 is boilerplate that does not describe the required algorithm (*id.*, ¶¶ 141-143). The excerpt at 3:4-11 states vaguely that "a translation layer will describe" how to map a protocol to a data line, but discloses no structure or steps for converting a control signal into a data packet.[6] Dell's expert has explained that such network layers are "defined abstractly by the functions performed" rather than

---

[6] This excerpt also implies that the '520 patent outsourced its duty to describe the required algorithm to the mysterious "translation layer."

structure, which UCT's expert does not dispute. Dkt. 77-8, ¶ 59. And UCT's point about multiplexing is wrong and a red herring. The patent describes multiplexing as distinct from converting (Dkt. 77 at 12) and multiplexing is not part of UCT's proposed constructions.

### 3.  "logic to arbitrate" ('520 Patent, claims 12, 19, and dependents)

UCT now advocates a construction in which hardware ("a general-purpose processor, special-purpose processor, or logic circuit") is programmed with software that performs an algorithm ("instructions to perform Steps 304-322 of Figure 3"). But that algorithm is itself indefinite. Dkt. 77 at 12-14. It includes the step in Box 306 of Fig. 3, which determines the next step based on whether "CBUS [is] idle or unused for ≥ $n$ cycles." Dkt. 77-4 at Fig. 3. Because the specification provides no guidance on the value of $n$, the Box 306 test—which, under UCT's proposal, would be a structural limitation of the claim—is indefinite. Dkt. 77 at 13-14.

UCT's insistence that "[t]he 'N' simply means that the invention can be implemented by choosing any number of cycles" (Dkt. 79 at 10) is mere attorney argument.[7] UCT offers no expert testimony to support its interpretation and does not apply the required standard—whether a POSITA would understand the specification this way. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("proper definition" of a claim term "is the definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record" (internal quotations omitted)); *see also Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 US 898, 910-912 (2014). Dell's expert explained that a POSITA "would not understand what is required by the threshold test of Box 306"

---

[7] UCT's reliance on *Fractus* is inapposite because that case did not involve a comparison to an undefined value. The numeric frequency values in *Fractus* were explicitly claimed and the only issue was whether a limitation requiring that a "band[ is] situated around" a specified frequency means the band is "situated near" that frequency or, as the court found, merely straddles it. *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-CV-00135-JRG, 2019 WL 1641357, *22-24 (E.D. Tex. Apr. 16, 2019).

because it "define[s] a comparison to a threshold . . . only in vague, subjective terms." Dkt. 77-8, ¶¶ 195-97. Those detailed opinions stand unrebutted; UCT offers no expert testimony on this limitation.[8] *Nautilus*, 572 US at 911. Instead, UCT attempts to salvage its claim by rewriting it to add new, unsupported limitations requiring that Block 306 requires "choosing any number of cycles" and moving to the next arbitration step "once the chosen number of cycles passes." Dkt. 79 at 10. The '520 patent does not describe a step of choosing the number of cycles, and it would be improper to read such a step into the claim merely to save it from invalidity. *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215 (Fed. Cir. 2008) ("[C]ourts may not redraft claims to cure a drafting error made by the patentee, whether to make them operable or to sustain their validity.").

## B.    "a preemption component" ('905 Patent, claim 21)

### 1.    "Preemption component" is a means-plus-function term

UCT urges the Court to adopt inconsistent constructions of the "component" terms. The EDTX Order found that "identification component" is means-plus-function but contradictorily found that "preemption component" is ***not***, because the claim (1) "does not use the term 'means'" and (2) "is not written in typical means-plus-function form [and instead] states the steps implemented by the component." Dkt. 79-2 at 16 (emphasis added) (citing *TecSec, Inc. v. Int'l Bus. Machines Corp.*, 731 F.3d 1336 (Fed. Cir. 2013)). Because the first reason equally applies to "identification component," the EDTX Order's finding that the "preemption component" limitation recites sufficient ***structure*** was premised on the recitation of multiple ***functions*** in that limitation. Specifically, the EDTX Order found this limitation not means-plus-function because "what LGL calls 'functions' are actually 'acts within the claim itself to perform entirely' what the

---

[8] UCT's expert testified in a different case that he could not identify a value of *n* in the specification and would need to consult external statistics to understand what value applies. Dkt. 77 at 14.

recited function would have been." *Id.* (citing *Personalized Media Commc'ns, LLC v. I.T.C.*, 161 F.3d 696, 704 (Fed. Cir. 1998)). But that was a misapplication of the law. The recital of "acts" is relevant only to **step**-plus function limitations of **method** claims and cannot avoid **means**-plus-function interpretation of an **apparatus** element. *OI Corp. v. Tekmar Co. Inc.*, 115 F. 3d 1576, 1582-83 (Fed. Cir. 1997) ("The statute of course uses terms that might be viewed as having a similar meaning, namely, steps and acts. . . . We interpret the term 'steps' to refer to the generic description of elements of a process, and the term 'acts' to refer to the implementation of such steps. . . . In this paragraph, structure and material go with means, acts go with steps."). Because "preemption component" is a "generic description of an apparatus element" and the claim does not recite sufficient "structure [or] material" to perform the corresponding functions, it is a means-plus-function limitation under § 112, ¶ 6.[9] *See id.*

Neither case cited in the EDTX Order supports its reasoning. *TecSec* held that "digital logic means" was not means-plus-function because the claims did ***not*** recite a function and instead recited structural elements of the digital logic means. *TecSec*, 731 F.3d at 1348. Neither is true here. The parties agree that the "preemption component" limitation recites functions. Dkt. 79-9 at 2. But it does not recite sufficient structure. The EDTX Order explicitly found that "component" is not sufficiently definite structure (*see* Dkt. 79-2 at 18 (in context of "identification component")) and found only "acts"—which are not structure (*OI Corp.*, 115 F. 3d at 1582-83)—in the remainder of the limitation (Dkt. 79-2 at 16). The other case cited in the EDTX Order found that the claimed

---

[9] That the claims recite **multiple** functions performed by the "pre-emption component" does not alter that conclusion. *See Media Rights Technologies, Inc. v. Capital One Financial Corp.*, 800 F.3d 1366, 1374 (Fed. Cir. 2015) (holding that "[w]here there are multiple claimed functions, as there are in this case, the patentee must disclose adequate corresponding structure to perform **all** of the claimed functions"); *see also Noah Sys.*, 675 at 1318-19 (also interpreting a limitation reciting a single means to perform multiple functions as means-plus-function under § 112, ¶ 6).

"digital detector" was not subject to § 112, ¶ 6 only because it was a known structure:

> "Detector" is not a generic structural term such as "means," "element," or "device";
> nor is it a coined term lacking a clear meaning, such as "widget" or "ram-a-fram."
> Instead, as noted by the ALJ by reference to dictionary definitions, "detector" had
> a well-known meaning to those of skill in the electrical arts connotative of structure,
> including a rectifier or demodulator."

*Personalized Media* at 704–05. Unlike "detector," "component" is a generic structural term like "element" or "device." UCT never argues otherwise.

UCT's suggestion that "preemption component" necessarily connotes structure because **different** elements in the claims and specification of the '905 Patent are structural also fails. Citing *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d. 1350 (Fed. Cir. 2011), UCT argues "preemption component" is "structural" because it interacts with other structural claim elements—a "communications device" and a "transmission component." *See* Dkt. 79 at 11–12. *Inventio* held that "modernizing device" connoted sufficiently definite structure only because the specification described numerous "internal components" of the modernizing device including how they "are connected together." 649 F.3d. at 1358–59. Here, by contrast, the '905 Patent does not disclose any internal components of the "preemption component." Indeed, the term "preemption component" does not even appear anywhere in the '905 Patent outside of claim 21.

*Media Rights* is more instructive, holding that "compliance mechanism" did not connote structure and was thus subject to § 112, ¶ 6 because the claims and specification simply stated that the mechanism performed various functions. *Media Rights* at 1372–74. The Federal Circuit rejected the patentee's argument that "the specification recit[e]s sufficient structure under *Inventio* because it describes how the 'compliance mechanism' is connected to and interacts with the other components of the system." *Id.* at 1373. It clarified that, in *Inventio*, "the specification's disclosure regarding how the 'modernizing device' and its **internal** components operated as a circuit … was

the basis for this Court's conclusion that 'modernizing device' was not a means-plus-function term." *Id.* (emphasis added). Mere description of how the "compliance mechanism" may "interact[] with other parts in the system" failed to connote sufficient structure for the term "compliance mechanism" itself.[10] *Id.* As in *Media Rights*, the '905 patent specification describes no internal structure for the "preemption component." Indeed, the '905 patent does not even use the term outside claim 21. *See, e.g.*, *Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*, 989 F.3d 1002, 1006 (Fed. Cir. 2021) (specification "does not impart any structural significance" to term "user identification module" because "it does not even mention a 'user identification module'"). UCT's remaining cited cases are inapplicable for this reason, as each found that, unlike the '905 Patent, the specification expressly described the structure for performing the claimed functions.

Finally, UCT's prosecution history argument is misleading. Dkt. 77 at 14. The Examiner was citing a prior art reference and did not identify any structure for the "preemption component" in the '905 Patent's application, which uses paragraph numbers, not line numbers.

The Court should thus find that the "preemption component" term is subject to § 112, ¶ 6. Dkt. 77 at 15-16; Dkt. 79-2 at 18.

### 2. The '905 Patent does not disclose adequate corresponding structure

For corresponding structure, UCT offers only a single sentence that improperly incorporates by reference its expert declaration and that cites to the discussion in its Section II.B.2. But that section never identifies ***any structure*** in the specification corresponding to the

---

[10] UCT's argument that mere description of ***connections to*** a structure is sufficient disclosure ***of the structure*** (Dkt. 77 at 13 (citing *E2E Processing, Inc. v. Cabela's Inc.*, 2015 WL 4051423 (E.D. Tex. July 2, 2015)) was rejected by the Federal Circuit in *Media Rights*, two months after *E2E Processing*. Furthermore, *E2E Processing* determined the claimed "component" terms were not subject to § 112, ¶ 6 because the terms were described in great detail in the patent specification, and the Court adopted long, narrative constructions consistent with that detailed description. *Id.* at *3-8. Here, by contrast, there is ***no*** structural description of the claimed "preemption component."

"preemption component." Instead, it (and the Madisetti declaration) refer only to **other** structures that UCT argues interact with the "preemption component" and **functional** language, which is not a disclosure of corresponding **structure**. Dkt. 77 at 16-17. Because the '905 patent fails to provide a structure for the "preemption component," the term is indefinite.

### C.    "identification component" ('798 Patent, claim 19 and dependents)

UCT no longer disputes that this term is governed by 35 U.S.C. § 112(6); instead, it merely asks the Court to adopt the EDTX Order's determination of corresponding structure—namely, the flowchart of Fig. 12 and its description of retrieving packets from either a control queue or data queue. Dkt. 79-2 at 20. But Fig. 12 does not even mention identifying packet type. And because the description of Fig. 10 explains that the packet type is used to store the packets in either a control or data queue, it must be identified **before** the packets are retrieved from those queues in Fig. 12. Dkt. 77-3 at 18:50-53 ("Packets to be transmitted are stored either in the control queue or the data queue **based on packet type** (which may be encoded in a synchronization primitive)" (emphasis added))). Notably, before its brief, UCT never identified Fig. 12 or its associated description as corresponding structure and it offers no expert testimony to support its new construction. Dkt. 79-9 at 3. Thus, the EDTX Order is in error and should not be adopted. Because the '798 Patent discloses no adequate structure for performing the functions of the "identification component," this limitation is indefinite. Dkt. 77 at 18-19.

### D.    "application data and control bits" ('307 Patent, all asserted claims)[11]

Dell proposes precisely the meaning of this term that the Court must adopt: "the ordinary meaning **in the context of the written description and the prosecution history**." *Phillips*, 415 F.3d

---

[11] UCT criticizes Dell for explaining how this dispute relates to the accused products (Dkt. 79 at 17, n.6), but such context is "meaningful" in claim construction. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F. 3d 1322, 1326-27 (Fed. Cir. 2006).

at 1313 (internal quotations omitted) (emphasis added). UCT offers no alternative ordinary meaning and no evidence that a POSITA would understand that "application data and control bits" could be encoded as special characters. Nor could it. "Special characters" and "application data and control bits" are recited as distinct claim elements and are thus "presumed to have different meanings." *Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F. 3d 1379, 1382 (Fed. Cir. 2008). The specification and prosecution history uniformly teach that "application data and control bits" are encoded together but are ***not*** encoded as "special characters," and there is not a single teaching in the intrinsic record to the contrary. *See* Dkt. 77 at 20-21. That is all consistent with the plain meaning of these terms in the art, as evidenced by the Franaszek patent cited on the face of the '307 patent. *See* Dkt. 77-13 at 8:46-49 (defining special characters as "extra code points beyond [those] needed to encode a byte of data"), 6:50-52 (special characters are "recognizable as other than data"), 3:29-35 (special characters are "readily distinguished from data").

The specification's description is not merely exemplary. It is definitional, repeatedly contrasting "encod[ed] cells (including application data and control bits)" from "special characters that are distinguishable from bit sequences of encoded cells." Ex. 77-2 at 8:38-48; 18:45-52 and 48:27-32; *Phillips*, 415 F.3d at 1315 (specification is "[t]he best source for understanding a technical term" (internal citations omitted)). UCT's attempt to diminish the repeated description of this as a feature of "the invention" is a red herring. As in the case cited by UCT, "claim language and the specification otherwise support [Dell's] construction." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1137-38 (Fed. Cir. 2011) (finding disputed term limited to a feature inconsistently described as part of "the invention" where, as here, dependent claims and portions of specification tied the disputed term to the feature).

UCT's claim differentiation argument proves Dell's point. *See* Dkt. 79 at 17. First, claim

differentiation is a rebuttable presumption that "cannot override clear statements of claim scope found in the specification and prosecution history." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016); *Seachange Intern., Inc. v. C-Cor, Inc.*, 413 F. 3d 1361, 1369 (Fed Cir 2005). Moreover, this case is not like *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1305 (Fed. Cir. 1999), where several claims recited an element but only one recited the additional characteristics of that element that defendant included in its construction. Here, "application data and control bits" and "special characters" are two separate claim elements and every claim is consistent with the specification's teaching that the former are not encoded as the latter, either because it does not require "special characters" at all (as in the asserted independent claims) or it expressly distinguishes between these two elements (as in every claim that requires "special characters"). *See, e.g.,* Dkt. 77-2 at 59:35-38, 59:46-51 (claim 25: "the encoded data are a sequence of at least one of the special characters and the code words" that are indicative of "application data and control bits," but "none of the special characters . . . matches a bit sequence of the code word sequence") and 61:54-66 (claim 41: "encoded data" includes "special characters" and also "a code word sequence" of "input words [] indicative of application data and control bits"). "Application data and control bits" should be construed consistently across these various claims. *Fin Control Sytems Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001) ("[T]he same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims"); *Cloud Farm Assocs. LP v. Volkswagen Grp. of Am., Inc.*, 674 F. App'x 1000, 1006 (Fed. Cir. 2017).

UCT disclaimed any other meaning in the IPR. Specifically, UCT explained that, as an "aspect of the invention" (Ex. 43 at 2), "input words indicative of application data and control bits"

are encoded "into a sequence of code words" but "special characters . . . are not encoded with the codewords." *Id.* at 3. Special characters are thus "separat[ed]" by the receiver before it "decod[es] the codewords" (i.e. the encoded application data and control bits). *Id.* at 4. UCT then distinguished the "primitives" in the Shin prior art from the claimed "control bits" for **the same reason**: according to UCT, they are "never encoded" with data and are separated from data "prior to decoding" it. *Id.* at 30-31. In other words, UCT argued that Shin's primitives cannot be "control bits" because, like "special characters," they are not encoded with data. UCT implies that it distinguished Shin on a different basis, but that is misleading and irrelevant. The disclaimer "analysis focuses on what the applicant said, not on whether the representation was necessary or persuasive." *Uship Intellectual Properties, LLC v. US*, 714 F. 3d 1311, 1315-16 (Fed. Cir. 2013).

> ### E.      "AV sink operation mode" and "AV source operation mode" ('265 Patent, all claims)

There is no real dispute regarding Dell's intended construction of these terms. Instead, UCT appears to misunderstand Dell's proposed construction, complaining that it requires "that the AV Device **always only** receives **both** power and data when in 'AV sink operation mode' and **only** provides **both** power and data when in 'AV source operation mode.'" Dkt. 79 at 20. Dell has no intent to limit the claims with UCT's added language (emphasized above). If the Court determines the meaning is unclear, Dell proposes alternative constructions with the following underlined revisions: "AV sink operation mode: A mode in which the AV device is able to receive (but does not provide) power and is able to receive (but does not send) data" and "AV source operation mode: A mode in which the AV device is able to provide (but does not receive) power and is able to send (but does not receive) data."

UCT complains only about portions of Dell's constructions that merely restate the claim language. It does **not** dispute the parenthetical language in Dell's construction, which clarifies that

a device in AV sink operation mode cannot provide power or send data and that a device in AV source operation mode cannot receive power or receive data. The Court should thus adopt these parentheticals, either as part of Dell's original or alternative construction.

### F.     "mobile device" ('520 Patent, all claims and '231 Patent, claim 14)

The parties dispute whether "mobile device" is so broad as to include personal computers and monitors. UCT urges the Court to adopt a tautological construction and leave this claim scope issue for the jury. Dkt. 79 at 23. That would be improper. *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co.,* 521 F. 3d 1351, 1360-61 (Fed. Cir. 2008) (the court, not the jury, must resolve claim scope disputes). The Court should resolve the dispute by adopting Dell's construction, which reflects the ordinary meaning of this term as used in the patents.

UCT points to no teaching in the patents or prosecution histories indicating that PCs or monitors are "mobile devices." The applicant could have included PCs and monitors in the patent's definition of "mobile devices," but chose not to. That definition includes a long list of exemplary electronics but omits PCs (desktop or laptop) and monitors, which were known products at the time and are mentioned ***elsewhere*** in the patents (but only to distinguish PCs from "portable devices" and cite monitors as an exemplary "standard device"). *See* Dkt. 77 at 23-24. UCT is simply wrong that "there is no basis in the patents for" recognizing that a mobile device is "smaller than a standard device." Dkt. 79 at 22. The patents teach that expressly. Dkt. 77-5 at 1:49-51 ("[A] mobile device may utilize a different type of connection than a standard device because of the smaller physical size"); *see generally id.* at 1:45-51, Dkt. 77-4 at 1:40-45. UCT also does not dispute the extrinsic evidence showing that, unlike "mobile devices," even laptop PCs at the time were large enough to include numerous standard interfaces and that the original owner of the patents distinguished PCs from mobile devices. Dkt. 77-25, 77-26, 77-27, 77-34. A POSITA would thus understand that PCs or monitors are not "mobile devices," as reflected in Dell's construction.

### G.    "standard protocol" / "modified protocol" ('520 Patent, all claims)

Two independent disputes remain on these terms.[12] First, "standard protocol" and "modified protocol" should be limited to protocols already defined as of the filing date of the patent. The claim term "standard" is "implicitly time-dependent." *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005). Addressing a similar "standard" claim term in *PC Connector*, the Federal Circuit made clear that "[a] claim cannot have different meanings at different times; its meaning must be interpreted as of its effective filing date." *Id*. It is incorrect that *PC Connector* can be distinguished here because "the specifics of any protocol are unimportant to the claim" and "standard is not used by itself, but rather in juxtaposition to 'modified.'" Dkt. 79 at 24 (quoting EDTX Order at 42). Claims 1 and 12, for example, recite that the "standard protocol" includes "one or more of a plurality of types of control signals." Dkt. 77-4 at 11:30-31, 12:33–37. That independent characteristic of the standard protocol is recited separately from the limitation juxtaposing the standard and modified protocols. *Id.* at 11:39-41, 12:49-51. *Cellspin* proves Dell's point. In that case, the court found no time limitation, because the claims lacked the kind of "inherently time-related" terms at issue in *PC Connector*. *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 17-CV-05928-YGR, 2021 WL 1417419, *10 (N.D. Cal. Apr. 14, 2021). But a time-limited *PC Connector* term—"standard"—***is*** present here. *Id.*

The second issue was not raised in the EDTX case: a "standard protocol" device communicates over more than one control bus while a "modified protocol" device communicates over one (and only one) control bus.[13] To overcome prior art in the IPR, UCT disclaimed any other

---

[12] Although UCT's expert opines on these terms, UCT did not cite to his declaration in its briefing and his opinions on these terms therefore should not be considered.

[13] The EDTX Order recognizes this, explaining that the '520 patent "relates to connections between electronic devices using ***only a single-bit bidirectional control bus***." EDTX Order at 4.

interpretation by defining the number of control buses as a "characteristic" of each protocol. Dkt. 77 at 25-26; Dkt. 77-28 at 27-28 (distinguishing the Yung and HDMI 1.3 combination); *see The PACid Grp., LLC v. Apple, Inc.*, No. 6:09CV143-LED-JDL, 2010 WL 2813654, at *11-12 (E.D. Tex. July 15, 2010) (limiting claim element to feature specification described as a "characteristic" of the element). UCT's (uncited) expert opinions ignore this critical disclaimer, and UCT has not identified anything in the specification that contradicts it. In fact, the patent uniformly supports UCT's disclaimer and explains why the number of control buses differs between the protocols— the modified protocol has fewer wires so that it can use a smaller connector compared to the standard protocol. *See* Dkt. 77 at 25. UCT's claim differentiation argument relates only to "standard protocol" and is incorrect. Claim 8 consistently interprets the "standard protocol" of claim 1 to require multiple control buses. It merely specifies that the different types of control signals are transmitted over those multiple buses. Moreover, claim differentiation "cannot override clear statements of claim scope found in the specification and prosecution history." *Poly-Am.,* 839 F.3d at 1137. The Court should thus adopt Dell's construction, which reflects the express definitions in the prosecution history, the specification's description that is consistent with those definitions, and the disclosed purpose of the alleged invention.

### H. "the modified protocol being a modification of the standard protocol that is not included in the standard protocol" ('520 Patent, all claims)

This phrase is indefinite because a POSITA cannot reasonably ascertain what it means for one protocol to be both "a modification of" and "not included in" a second protocol or what qualifies as a sufficient modification.

UCT relies entirely on conclusory expert opinion. *See* Dkt. 79 at 26-28. Dr. Madisetti's declaration that "nothing in the claim language or specification suggests . . . that the 'modified protocol' 'inherits no features of the standard protocol" (Dkt. 79-3, ¶ 73; Dkt. 79 at 26) ignores—

and certainly offers no alternative interpretation of—the claim language requiring that "the modified protocol . . . is ***not included in the standard protocol***." And to support his view that the disputed phrase "is well-understood by a POSITA," Dr. Madisetti states only that the specification describes the HDMI protocol as a "standard protocol" and the USB protocol as a "modified protocol." Dkt. 79-3, ¶¶ 73-74. Dell's expert explained in detail why, if true, that would only compound a POSITA's confusion about the meaning of this disputed phrase—the purported modified protocol (USB) was released ***before*** the purported standard protocol (HDMI), the two protocols are "completely independent and not inter-operable," and they have different purposes. Dkt. 77-8, ¶ 317 (cited at Dkt. 77 at 27). Dr. Madisetti does not dispute these points, and his conclusory statements cannot prevail over the detailed, well-founded opinion of Dell's expert. *Phillips*, 415 F.3d at 1318 (conclusory opinions on claim construction "are not useful to a court."); *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 513-16 (Fed. Cir. 2016) (plaintiff's conclusory expert opinion cannot rebut detailed opinion of invalidity by defendant's expert). That Dr. Madisetti contradicted himself in the HP case, testifying ***both*** that "whether the modified protocol must have any similarities to the standard protocol" "depends on the products at issue" ***and*** that he "disagree[s]" that "the only way to determine the meaning of these claim terms is to look to accused products" (Dkt. 79-7 at 62:10-23) is only more reason to doubt his credibility.

Dr. Madisetti also offers no opinion on the PTAB's view that the claims require a "***sufficiently*** 'modified'" protocol. Dkt. 77-29 at 20 (emphasis added). The opinion of Dell's expert that what is (or is not) a "sufficient" modification "would be entirely unclear to a POSITA" thus stands unrebutted. Dkt. 77-8, ¶ 316. UCT's argument that whether a protocol is modified or not is a "binary determination" contradicts the IPR record. Despite conceding that the prior art HDMI-C protocol is a "variant" of standard HDMI, UCT argued that HDMI-C is nevertheless not

a "modified protocol" and the PTAB implied that it is not "sufficiently modified" to meet the claims. Dkt. 77-29 at 19.

## I.    "first physical channel" ('103 Patent, all claims)[14]

UCT seeks to evade clear prosecution disclaimer on this term by mischaracterizing both the case law and the record. UCT's cited cases are inapposite.[15] The disclaimer at issue here came *from the applicant* who, despite numerous opportunities, never disputed the disclaimer and instead allowed the claims to issue based on it. Specifically: (1) the *applicant* "described the invention as a TMDS channel…" in an interview several months before allowance (Dkt. 77-31 at UCT-DELL-00007219); (2) the *applicant* acknowledged that interview and did not dispute the examiner's characterization of applicant's statements (*id.* at -7227); (3) in a second interview, the discussion focused on the TMDS channel being the "primary reason for allowance" (*id.* at -7249); and (4) the examiner allowed the claims based on the TMDS channel requirement (*id.* at -7247). This is not a case of "an applicant's silence regarding statements made by the examiner during prosecution, *without more*." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) (emphasis added). Disclaimer is present here because the "examiner [] repeated the arguments that the

---

[14] Dell has not "dropped" its position on the separately-identified phrase "physical channel." Dkt. 79 at 28, n.13. Rather, given page limitations, the parties agreed to focus briefing on a subset of disputed terms most likely to resolve issues. *See* Ex. 44.

[15] Whereas *Salazar v. Procter & Gamble Co.* addressed the narrow issue of "whether unilateral statements of an examiner in stating reasons for allowance can create a" disclaimer, 414 F.3d 1342, 1345 (Fed. Cir. 2005), Dell relies on *applicant's* own statements. In *Polaris*, the defendant argued for disclaimer based on the "examiner's interpretation of [patentee]'s response argument, not the actual argument [patentee] made before the PTO." *Polaris PowerLED Techs., LLC v. Dell Techs., Inc.*, No. 1:22-CV-973-RP, 2025 WL 2182327, at *6 (W.D. Tex. Mar. 4, 2025) (noting that a review of the prosecution history showed that the patentee "instead argued that the prior art did not [meet the claims for a different reason]."). *Id.* And in *Sorensen*, the Federal Circuit simply found that "the exchange [between the applicant and examiner] in no way shows a clear and unambiguous disavowal" of claim scope, and its analysis did not turn on any particular statement made by the examiner. *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1380 (Fed. Cir. 2005).

patentee had presented" and the prosecution history "make[s] clear that the examiner and the applicant understood that the invention requires [a TMDS channel]." *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003).[16] The applicant described a specific TMDS channel as part of its "invention" and, over the course of six months and several interactions, never challenged the examiner's reliance on that description and allowed the examiner to issue the claims based upon it. Dell's construction is thus necessary to "ensure[] that [the] claims are not construed one way in order to obtain their allowance and in a different way against accused infringers." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) (internal quotation omitted).

UCT's argument that it is unclear whether the disclaimer concerns "the 'first physical channel' limitation as opposed to ***some other aspect of the invention*** (such as the multimedia link)" is a revealing Freudian slip. Dkt. No. 79 at 30 (emphasis added). UCT concedes that ***something*** in the claims—whether the "first physical channel" or the "multimedia link" (which includes the "first physical channel")—requires a TMDS channel that transmits video and audio data in only one direction and USB data bidirectionally. Regardless, the disclaimer clearly refers to the "first physical channel," the only channel that the claims require to transmit video data in one direction and USB data bidirectionally (*e.g.,* Dkt. 77-6 at 10:1-12) and the specification refers to as a "TMDS channel" (*see* Dkt. 77 at 28).

---

[16] UCT attempts to distinguish *ACCO Brands* on the basis that Applicant's statements were made during "telephonic calls," but offers no justification for treating oral and written statements differently. If UCT's position were adopted, applicants could game the system by limiting the scope of their claims in an interview to achieve issuance, then subsequently expanding the scope during litigation. Such a regime would undermine the "important role" of prosecution history: "promot[ing] the public notice function of the intrinsic evidence and protect[ing] the public's reliance on definitive statements made during prosecution." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013).

Dated: October 20, 2025

Respectfully submitted,

By: /s/ *Kevin J. Meek*
Kevin J. Meek
Texas State Bar No. 13899600
Syed Fareed
Texas State Bar No. 24065216
Brian Oaks (pro hac vice)
Texas State Bar No. 24007767
Nick Schuneman
Texas State Bar No. 24056283
**MCDERMOTT WILL & SCHULTE LLP**
300 Colorado Street, Suite 2200
Austin, Texas 78701-4078
Telephone: (512) 726-2579
Facsimile: (512) 532-0002
kmeek@mwe.com
sfareed@mwe.com
boaks@mwe.com
nschuneman@mwe.com

***Attorneys for Defendants Dell Technologies
Inc. and Dell Inc.***

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on October 20, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Kevin J. Meek*
Kevin J. Meek

# APPENDIX B

## Appendix B-1: Agreed Constructions

The parties have agreed to the following constructions:

| Patent | Claim term | Agreed Construction |
|---|---|---|
| '798 Patent | "synchronization symbol" | "a symbol for coordinating events that is separate from the corresponding packet itself" |
| '798 and '905 Patents | "in-band symbol" | "a symbol normally appearing in a packet" |
| '798 and '905 Patents | "out-of-band symbol" | "a symbol not normally appearing in a packet" |
| '103 Patent | "non-transitory computer readable storage medium storing instructions representing a digital design of a circuit comprising" | The preamble is limiting. |
| '231 Patent | "the transmitter to drive a first signal value on the control bus periodically upon transitioning to the pending state" | the transmitter to drive a first signal value on the control bus in regular, repeated cycles upon transitioning to the pending state |

## <u>Appendix B-2: The Parties' Constructions of Disputed Briefed Terms</u>

The following tables list the remaining briefed disputed terms as of Dell's Reply Brief, identify the asserted claims in which each disputed term appears (either explicitly or, for dependent claims, by inheritance from a claim on which it depends), and set forth the parties' respective constructions.

**'905 Patent**

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "a preemption component that signals the transmission component to stop transmitting the first packet, transmits a preempt indicator indicating that a second packet is to be transmitted, transmits the second packet, and signals the transmission component to continue transmitting the first packet" | 21 (and dependent claims 22, 23, 26) | This term is a means-plus-function limitation under 35 U.S.C. § 112(6).<br><br>**Function:** signaling the transmission component to stop transmitting the first packet, transmitting a preempt indicator indicating that a second packet is to be transmitted, transmitting the second packet, and signaling the transmission component to continue transmitting the first packet<br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | Plain and ordinary meaning.<br><br>This claim term does not invoke §112(6).<br><br>Alternatively, should §112(6) apply:<br><br>Function: "signals the transmission component to stop transmitting the first packet, transmits a pre-empt indicator indicating that a second packet is to be transmitted, transmits the second packet, and signals the transmission component to continue transmitting the first packet"<br><br>Corresponding structure: "20:3-25, Fig. 13 and 20:31-37, Fig. 14 and 20:50-67, and equivalents thereof" |

**'307 Patent**

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "application data and control bits" | All asserted claims (appears specifically in, e.g., claims 1, 23, 53, 68) | The application data and control bits are not encoded as special characters. | No construction necessary. |

**'798 Patent**

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "an identification component that identifies a packet type of a packet of symbols" | 19 (and dependent claims 20-26, 28) | This term is a means-plus-function limitation under 35 U.S.C. § 112(6). <br><br>**Function:** Identifying a packet type of a packet of symbols <br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | Subject to 35 U.S.C. § 112 ¶ 6 <br><br>**Function:** identifies a packet type of a packet of symbols <br><br>**Structure:** "a general-purpose processor, special-purpose processor, or logic circuit programmed to determine whether the packet was removed from a control queue or a data queue, and send an indication of whether the packet was removed from the control queue or the data queue to the transport layer" |

**'265 Patent**

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "AV sink operation mode" | All asserted claims (appears specifically in, e.g., claims 1, 8, 14) | A mode in which the AV device receives (but does not provide) power and receives (but does not send) data. | Plain and ordinary meaning.<br><br>No further construction necessary. |
| "AV source operation mode" | All asserted claims (appears specifically in, e.g., claims 1, 8, 14) | A mode in which the AV device provides (but does not receive) power and sends (but does not receive) data. | Plain and ordinary meaning.<br><br>No further construction necessary. |

**'520 Patent**

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "logic to convert each of one or more control signals into a data packet" (claim 12) | 12 (and dependent claims 13, 15, 18) | This term is means-plus-function limitations under 35 U.S.C. § 112(6).<br><br>**Function:** Converting each of one or more control signals into a data packet.<br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | Subject to 35 U.S.C. § 112 ¶ 6<br><br>**Function:** convert each of one or more control signals into a data packet, each of the one or more control signals being one of a plurality of different types of control signals for a standard protocol, each data packet including a plurality of bits to be transmitted<br><br>**Structure:** a general-purpose processor, special-purpose processor, or logic-circuit programmed to form control signal bytes into data packets that include (1) a header field indicating the type of the packet, and (2) a control field identifying whether the packet is carrying data or a command, and equivalents thereof |

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "logic to convert each of the one or more data packets into a control signal" (claim 19) | 19 (and dependent claim 25) | This term is means-plus-function limitations under 35 U.S.C. § 112(6).<br><br>**Function:** Converting each of the one or more data packets into a control signal.<br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | Subject to 35 U.S.C. § 112 ¶ 6<br><br>**Function:** convert each of the one or more data packets into a control signal<br><br>**Structure:** a general-purpose processor, special-purpose processor, or logic circuit programmed to (1) identify the packet type from a header of a received packet, and (2) identify whether the packet is data or a command from a control field of the received packet, and equivalents thereof |

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "logic to arbitrate use of the first control bus, the logic to arbitrate use being operable to: determine whether the control bus is in use by the receiving device, and if the first control bus is not in use by the receiving device, conduct arbitration for control of the first control bus" (claim 12) / "logic to arbitrate use of the first control bus, the logic to arbitrate use being operable to: determine whether the control bus is in use by the transmitting device, and if the first control bus is not in use by the transmitting device, conduct arbitration for control of the first control bus" (claim 19) | 12 (and dependent claims 13, 15, 18); 19 (and dependent claim 25) | These terms are means-plus-function limitations under 35 U.S.C. § 112(6). **Function (claims 12 and 19):** arbitrate use of the first control bus by determining whether the control bus is in use by the receiving device [/ transmitting device] and, if the first control bus is not in use by the receiving device [/ transmitting device], conducting arbitration for control of the first control bus. **Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | Subject to 35 U.S.C. § 112 ¶ 6 **Function:** to arbitrate use of the first control bus, the logic to arbitrate use being operable to: [i] determine whether the control bus is in use by the receiving device [/ transmitting device], and [ii] if the first control bus is not in use by the receiving device [/ transmitting device], conduct arbitration for control of the first control bus **Structure:** a general-purpose processor, special-purpose processor, or logic circuit programmed with instructions to perform Steps 304-322 of Figure 3, and equivalents thereof |

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "mobile device" | All asserted claims (appears specifically in, e.g., claims 1, 12, 19) | a cellular telephone, smartphone, PDA (personal digital device), MP3 or other format music player, digital camera, video recorder, digital storage device, and other similar devices (i.e. portable devices smaller than a standard device such as a personal computer or monitor). | "any mobile electronic device" |
| "standard protocol" | All asserted claims (appears specifically in, e.g., claims 1, 12, 19) | A communication protocol that was standardized as of the January 4, 2008 filing date of the '520 patent. A device utilizing the standard protocol communicates over multiple control buses. | "a standardized communication protocol" |
| "modified protocol" | All asserted claims (appears specifically in, e.g., claims 1, 12, 19) | A communication protocol that is a modification of the standard protocol, that was defined as of the January 4, 2008 filing date of the '520 patent. A device utilizing the modified protocol communicates over one (and only one) control bus. | "a modification of the standard protocol that is not included in the standard protocol" |
| "the modified protocol being a modification of the standard protocol that is not included in the standard protocol" | All asserted claims (appears specifically in claims 1, 12, 19) | Indefinite | No construction necessary. |

Page 9

**'231 Patent**

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "logic to detect signals on the cable interface" | 10 (and dependent claims 11-14) | This term is a means-plus-function limitation under 35 U.S.C. § 112(6).<br><br>**Function:** Detecting signals on the cable interface.<br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | Subject to 35 U.S.C. § 112 ¶ 6<br><br><u>Function</u>: detect signals on the cable interface<br><br><u>Structure</u>: The corresponding structure is defined by the subparts of the limitation |
| "a first logic to detect a voltage value on the power bus…" | 10 (and dependent claims 11-14) | This term is a means-plus-function limitation under 35 U.S.C. § 112(6).<br><br>**Function:** Detecting a voltage value on the power bus.<br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | Subject to 35 U.S.C. § 112 ¶ 6<br><br><u>Function</u>: detect a voltage value on the power bus<br><br><u>Structure</u>: a voltage detector with an input connected to the pin of the transmitter that is connected to the power bus, and equivalents thereof |
| "a second logic to detect signals on the control bus…" | 10 (and dependent claims 11-14) | This term is a means-plus-function limitation under 35 U.S.C. § 112(6).<br><br>**Function:** Detecting signals on the control bus.<br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | Subject to 35 U.S.C. § 112 ¶ 6<br><br><u>Function</u>: detect signals on the control bus<br><br><u>Structure</u>: a voltage detector with an input connected to the pin of the transmitter that is connected to the control bus, and equivalents thereof |

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "logic to discover a transmitting device coupled with the receiving device" | 16 (and dependent claims 17, 18) | This term is a means-plus-function limitation under 35 U.S.C. § 112(6).<br><br>**Function:** Discovering a transmitting device coupled with the receiving device.<br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | "logic to discover"<br><br><u>Structure</u>: The corresponding structure is defined by the subparts of the limitation. |
| "a first logic to detect a first signal on the control bus…" | 16 (and dependent claims 17, 18) | This term is a means-plus-function limitation under 35 U.S.C. § 112(6).<br><br>**Function:** Detecting a first signal on the control bus.<br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | Subject to 35 U.S.C. § 112 ¶ 6<br><br><u>Function</u>: detect a first signal on the control bus<br><br><u>Structure</u>: a voltage detector with an input connected to the pin of the receiver that is connected to the control bus, and equivalents thereof |

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "a second logic to detect a power signal from the transmitting device…" | 16 (and dependent claims 17, 18) | This term is a means-plus-function limitation under 35 U.S.C. § 112(6).<br><br>**Function:** Detecting a power signal from the transmitting device.<br><br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite. | <u>Function</u>: detect a power signal from the receiving [transmitting] device[1]<br><br><u>Structure</u>: a voltage detector with an input connected to the pin of the receiver that is connected to a power signal line, and equivalents thereof |
| "mobile device" | 14 | a cellular telephone, smartphone, PDA (personal digital device), MP3 or other format music player, digital camera, video recorder, digital storage device, and other similar devices (i.e. portable devices smaller than a standard device such as a personal computer or monitor). | "any mobile electronic device" |

---

[1] Dell copied this description of the function from UCT's brief (Dkt. 79 at 4). However, UCT's proposed construction is confusing as to whether this element requires detecting a power signal from the receiving device or the transmitting device. The EDTX Order adopted the following function: "detect a power signal from the receiving device." Dkt 79-2 at 47. That appears to include a typographical error, as both parties in that case proposed that the function is "detect a power signal from the transmitting device." *Id.* at 35.

**'103 Patent**

| Claim Term | Asserted Claim(s) | Dell's Construction | UCT's Construction |
|---|---|---|---|
| "first physical channel" | All asserted claims (appears specifically, e.g., in 1, 11, 21, 22) | A Transition-Minimized Differential Signaling (TMDS) channel. | "a physical path for transmitting electrical signals" |
| "the first synchronization signal" | 17 | Indefinite. | [*UCT no longer asserts claim 17*] |