# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UNIVERSAL CONNECTIVITY<br>TECHNOLOGIES INC.,<br>     *Plaintiff*<br><br>v.<br><br>DELL TECHNOLOGIES INC. and<br>DELL INC.,<br>     *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:23-cv-01506-RP |

## CLAIM CONSTRUCTION ORDER

Now before the Court are the Parties' claim construction briefs:

- Defendants' Opening Claim Construction Brief, filed August 29, 2025 (Dkt. 77);

- Plaintiff Universal Connectivity Technologies Inc.'s Responsive Claim Construction Brief, filed September 26, 2025 (Dkt. 79);

- Defendants' Reply Claim Construction Brief, filed October 20, 2025 (Dkt. 81);

- Plaintiff Universal Connectivity Technologies Inc.'s Corrected Sur-reply Claim Construction Brief, filed November 20, 2025 (Dkt. 88); and

- Plaintiff's Notices of Supplemental Authority Regarding Claim Construction, filed November 7, 2025 (Dkt. 84) and November 24, 2025 (Dkt. 89).

The Court held a *Markman* hearing on November 24, 2025 at which both parties appeared through counsel and now enters this order on claim construction.

## I.    Background

Plaintiff Universal Connectivity Technology ("UCT") accuses Defendants Dell Technologies Inc. and Dell Inc. ("Dell") of infringing eight Asserted Patents that generally relate to technologies for connecting and communicating between multiple devices, such as computers, mobile phones, or peripheral devices.[1] The parties ask the Court to construe eighteen claim terms across seven of

---

[1] U.S. Patent Nos. 7,154,905 ("'905 Patent"), 7,187,307 ("'307 Patent"), 7,746,798 ("'798 Patent"), 9,232,265 ("'265 Patent"), 8,680,712 ("'712 Patent"), 7,856,520 ("'520 Patent"), 7,921,231 ("'231 Patent"), and 9,852,103 ("'103 Patent").

the Asserted Patents. Thirteen of those terms were recently construed in co-pending litigation in the Eastern District of Texas set for trial February 6, 2026. *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-cv-00449-JRG ("*Lenovo*"), Dkt. 204 (E.D. Tex. Sept. 16, 2025), Dkt. 79-2 here. The Northern District of California then adopted all eight of those constructions it considered in another co-pending case set for trial September 21, 2026. *Universal Connectivity Techs. Inc. v. HP Inc.*, No. 5:24-cv-04097-NW ("*HP*"), Dkt. 197 (N.D. Cal. Nov. 7, 2025), Dkt. 84-1 here.

## II.   Legal Standards

### A.  Claim Construction Generally

Claim terms are generally given their plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. The only two exceptions to this general rule are when the patentee acts as their own lexicographer or disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The "standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To act as their own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "clearly express an intent to redefine the term." *Thorner,* 669 F.3d at 1365 (citations omitted).

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998) (citation omitted). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was

previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). Alleged disavowing actions or statements made during prosecution must be "both clear and unmistakable." *Id.* at 1326. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). In that case, the Court must describe what the plain and ordinary meaning is. *Id.*

Extrinsic evidence can be useful but is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Expert testimony may be helpful, but not an expert's conclusory or unsupported assertions as to the meaning of a term. *Id.* at 1318.

## B.  Indefiniteness

Indefiniteness "is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Patent claims must point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112 ¶ 2. When viewed in light of the intrinsic evidence, a claim must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112 ¶ 2 and is invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed. *Id.* at 911. Indefiniteness requires clear and convincing evidence. *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

3

## C. Means-Plus-Function

Under 35 U.S.C. § 112(f), a patentee may express a claim in terms of "means or step[s] for performing a specified function without the recital of structure, material, or acts in support thereof." Such means-plus-function claims must "be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.* Section 112(f)

> allow[s] patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof.

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc).

Courts first must determine whether that limitation is a means-plus-function term subject to § 112(f). *See id.* at 1348; *see also Phillips*, 415 F.3d at 1311 ("Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function."). Generally, use of the term "means" creates a presumption that § 112(f) applies, while absence of the term "means" creates the opposite presumption. *Williamson*, 792 F.3d at 1349. A party may overcome either presumption by showing that the claims do or do not recite a "sufficiently definite structure" to adequately perform the claimed function. *Id.* In other words, § 112(f) applies only if "the claim term 'fails to recite[ ] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* at 1348 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

If means-plus-function applies, the court engages in a two-step inquiry to construe the claim. The court must "identify the claimed function" first, then "determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.* at 1351. A structure

4

corresponds to the claimed function if "the specification or the prosecution history clearly links or associates that structure to the function recited in the claim." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012) (citation omitted). The corresponding structure "must include all structure that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). Structure can be recited in various ways, including by using "'a claim term with a structural definition that is either provided in the specification or generally known in the art,' or a description of the claim limitation's operation and 'how the function is achieved in the context of the invention.'" *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1366 (Fed. Cir. 2022) (quoting *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1299 (Fed. Cir. 2005)). If the intrinsic evidence fails to disclose adequate corresponding structure, the claim is indefinite. *Noah Sys.*, 674 F.3d at 1311-12.

### III.    Analysis

UCT asks the Court to adopt Judge Payne's constructions of the disputed terms addressed in *Lenovo*, stating: "While UCT does not necessarily agree with all the constructions in the *Lenovo* Order, the Court should nonetheless adopt those constructions to promote consistency across cases." Dkt. 79 at 6. Dell argues that the *Lenovo* constructions "are incorrect as a matter of law and the Court should decline to adopt them." Dkt. 81 at 7.

While the court appointed a technical advisor in *Lenovo* and Judge Wise adopted the construction of each disputed term also construed in *HP*, the Court is mindful that the District Court for the Eastern District of Texas has not ruled on Lenovo's objections to Judge Payne's claim construction order. This Magistrate Judge has independently construed the disputed terms and carefully considered the parties' arguments for and against the constructions in *Lenovo*. As did Judge Wise, this Magistrate Judge finds the *Lenovo* order to be "supported and well-reasoned" and construes most disputed terms consistently with it. Dkt. 84-1 at 15.

5

### A.  Disputed Terms

### 1.    "Logic to discover / detect"

The first six disputed terms are recited in Claims 10 and 16 of the '231 Patent. The parties do

not dispute that they are means-plus-function terms subject to 35 U.S.C. § 112 ¶ 6. The claims are:

10.  A transmitting device comprising:

a transmitter to transmit signals to a receiving device;

a cable interface to couple with the receiving device, the cable interface including:

a single-wire, bi-directional control bus, and

a power bus powered by the receiving device;

*logic to detect signals on the cable interface*, the logic including:

*a first logic to detect a voltage value on the power bus*, the transmitter to transition from a disconnect state to a pending state when a predetermined voltage is detected on the power bus by the first logic, the disconnect state indicating that the transmitting device is not connected to a receiving device, and

*a second logic to detect signals on the control bus,* the transmitter to drive a first signal value on the control bus periodically upon transitioning to the pending state, the transmitter to transition to a discovered state when the first signal value is detected by the second logic when the transmitter is not driving the signal value on the control bus, the discovered state indicating that the transmitter has been discovered by the receiving device.

16.  A receiving device comprising:

a receiver to receive signals from a transmitting device;

an interface to be coupled with a transmitting device, the interface including a single-wire control bus and a power bus, the receiving device to enable a voltage potential of a predetermined value on the power bus and to drive a signal on the control bus at a first signal value in a disconnect state, the disconnect state indicating that the receiving device is not connected to a transmitting device; and

a switchable pull down circuit on the control bus;

*logic to discover a transmitting device* coupled with the receiving device, wherein the logic includes:

*a first logic to detect a first signal on the control bus*, the receiving device to discover a first type of transmitting device and transition to a first state when the first signal is detected, the receiving device to enable the switchable pull down circuit on the control bus and disable hot plug functionality upon discovering the first type of transmitting device, and

6

*a second logic to detect a power signal from the receiving device*, the receiving device to discover a second type of transmitting device and transition to a second state when the power signal is detected.

'231 Patent at 12:52-13:7, 13:23-14:11, Dkt. 1-21 at 21-22 (emphasis added).

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **'231 Patent**, claim 10 and dependent claims 11-14<br><br>"logic to detect signals on the cable interface" | Subject to 35 U.S.C. § 112 ¶ 6 **Function:** detect signals on the cable interface **Structure:** The corresponding structure is defined by the subparts of the limitation | This term is a means-plus-function limitation under 35 U.S.C. § 112(6) **Function:** Detecting signals on the cable interface **Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |
| **'231 Patent**, claim 10 and dependent claims 11-14<br><br>"a first logic to detect a voltage value on the power bus…" | Subject to 35 U.S.C. § 112 ¶ 6 **Function:** detect a voltage value on the power bus **Structure:** a voltage detector with an input connected to the pin of the transmitter that is connected to the power bus, and equivalents thereof | This term is a means-plus-function limitation under 35 U.S.C. § 112(6) **Function:** Detecting a voltage value on the power bus **Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |
| **'231 Patent**, claim 10 and dependent claims 11-14<br><br>"a second logic to detect signals on the control bus…" | Subject to 35 U.S.C. § 112 ¶ 6 **Function:** detect signals on the control bus **Structure:** a voltage detector with an input connected to the pin of the transmitter that is connected to the control bus, and equivalents thereof | This term is a means-plus-function limitation under 35 U.S.C. § 112(6) **Function:** Detecting signals on the control bus **Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |
| **'231 Patent**, claim 16 and dependent claims 17, 18<br><br>"logic to discover a transmitting device coupled with the receiving device" | "logic to discover" **Structure:** The corresponding structure is defined by the subparts of the limitation | This term is a means-plus-function limitation under 35 U.S.C. § 112(6) **Function:** Discovering a transmitting device coupled with the receiving device **Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
| --- | --- | --- |
| **'231 Patent**, claim 16 and dependent claims 17, 18<br><br>"a first logic to detect a first signal on the control bus" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** Detect a first signal on the control bus<br>**Structure:** a voltage detector with an input connected to the pin of the receiver that is connected to the control bus, and equivalents thereof | This term is a means-plus-function limitation under 35 U.S.C. § 112(6)<br>**Function:** Detecting a first signal on the control bus<br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |
| **'231 Patent**, claim 16 and dependent claims 17, 18<br><br>"a second logic to detect a power signal from the transmitting device…" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** detect a power signal from the receiving [transmitting] device<br>**Structure:** a voltage detector with an input connected to the pin of the receiver that is connected to a power signal line, and equivalents thereof | This term is a means-plus-function limitation under 35 U.S.C. § 112(6)<br>**Function:** Detecting a power signal from the transmitting device.<br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |

UCT's proposed construction is the construction adopted in both *Lenovo* and *HP*. Dell contends that the limitations are indefinite because the patent fails to disclose adequate corresponding structure. Dell argues that the only question pertinent to construction of these claims is whether the patent discloses a voltage detector, which is not mentioned in the '231 Patent. UCT responds that (1) Judge Wise rejected the same argument in *HP*, (2) "voltage detector" is a well-known term, and (3) neither of the two courts to construe these terms resorted to expert or other extrinsic evidence. *Lenovo*, Dkt. 79-2 at 33; *HP*, Dkt. 84-1 at 12-14.

As for "a first logic to detect a voltage value on the power bus," Judge Payne reasoned:

> There is corresponding structure. Clearly, this logic must involve some hardware because it detects a voltage on a bus. And while the transmitter is a separate element of the claims, the specification is clear that the "logic" is part of the transmitter. *See* '231 Patent at 3:24-26 ("[A] transmitting device and a receiving device each further include logic to detect power signals that are received."), 8:55-59 ("[T]he HDMI transmitter chip 812 and HDMI-E receiver chip 832 include logic to detect signals on the control bus."). Given this disclosure and the figures, a skilled artisan would understand the "logic to detect" to be a voltage detector internal to the transmitter chip and connected to an input pin of the transmitter. The output of the detector, which is internal to the transmitter chip, provides the

indication of whether the voltage has been detected. Accordingly, the Court holds the corresponding structure to be "a voltage detector with an input connected to the pin of the transmitter that is connected to the power bus, and equivalents thereof."

*Lenovo*, Dkt. 79-2 at 33. While Dell of course is correct that "voltage detector" does not appear in the '231 Patent, the Court agrees that the claims recite a "sufficiently definite structure" to adequately perform the claimed function. As Judge Payne explained, there is not a "total absence of structure" in the specification, distinguishing this case from *Default Proof*, 412 F.3d at 1302. The Court holds that the corresponding structure is defined by the subparts of the limitation.

The Court finds that the patent discloses corresponding structure for all six related "logic" terms and construes each consistently with Judges Payne and Wise.

### 2.  "Logic to convert"

As Judge Payne noted in *Lenovo*, the parties have similar disputes over "logic to . . ." terms from Claims 12 and 19 of the '520 Patent, reciting transmitting and receiving devices, respectively:

12.  A transmitting device comprising:

    a connection to a single first control bus, the first control bus being a bi-directional, single-line bus, wherein the transmitting device is operable for coupling with a receiving device via the first control bus;

    *logic to convert each of one or more control signals into a data packet*, each of the one or more control signals being one of a plurality of different types of control signals for a *standard protocol*, each data packet including a plurality of bits to be transmitted;

    a transmitter, the transmitter to transmit the data packets to the receiving device on the first control bus; and

    *logic to arbitrate use of the first control bus*, the logic to arbitrate use being operable to:

    determine whether the control bus is in use by the receiving device, and

    if the first control bus is not in use by the receiving device, conduct arbitration for control of the first control bus, and wherein the receiving device is a device utilizing the *standard protocol* and the transmitting device is a mobile device utilizing a *modified protocol*, the *modified protocol* being a modification of the standard protocol that is not included in the *standard protocol*.

'520 Patent at 12:28-51, Dkt. 1-17 at 18 (emphasis added).

19. A receiving device comprising:

a connection to a single first control bus, the first control bus being a bi-directional, single-line bus, wherein the receiving device is operable for coupling with a transmitting device via the first control bus;

a receiver to receive one or more data packets on the first control bus, each of the one or more data packets representing one of a plurality of different types of control signals;

*logic to convert each of the one or more data packets into a control signal*; and

*logic to arbitrate use of the first control bus*, the logic to arbitrate use being operable to:

determine whether the control bus is in use by the transmitting device, and

if the first control bus is not in use by the transmitting device, conduct arbitration for control of the first control bus, and wherein the receiving device is a device utilizing the standard protocol and the transmitting device is a mobile device utilizing a modified protocol, *the modified protocol being a modification of the standard protocol that is not included in the standard protocol*.[2]

'520 Patent at 13:6-14:3, Dkt. 1-17 at 19 (emphasis added).

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **'520 Patent**, asserted claim 12 and dependent claims 13, 15, 18<br><br>"logic to convert each of one or more control signals into a data packet" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** convert each of one or more control signals into a data packet, each of the one or more control signals being one of a plurality of different types of control signals for a standard protocol, each data packet including a plurality of bits to be transmitted<br>**Structure:** a general-purpose processor, special-purpose processor, or logic-circuit programmed to form control signal bytes into data packets that include (1) a header field indicating the type of the packet, and (2) a control field identifying whether the packet is carrying data or a command, and equivalents thereof | This term is means-plus-function limitations under 35 U.S.C. § 112(6)<br>**Function:** Converting each of one or more control signals into a data packet.<br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |

---

[2] The parties' disputes over the standard and modified protocol claims shown in bold are addressed below.

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| '520 Patent, asserted claim 19 and dependent claim 25<br><br>"logic to convert each of the one or more data packets into a control signal" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** convert each of the one or more data packets into a control signal<br>**Structure:** a general-purpose processor, special-purpose processor, or logic circuit programmed to (1) identify the packet type from a header of a received packet, and (2) identify whether the packet is data or a command from a control field of the received packet, and equivalents thereof | This term is means-plus-function limitations under 35 U.S.C. § 112(6)<br>**Function:** Converting each of the one or more data packets into a control signal.<br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |

Judge Payne reviewed Figures 7 and 8 in the '520 Patent, along with the explanations in the patent of how commands are transferred between standard HDMI and HDMI-M devices by mapping standard protocols using a translation layer. Based on this analysis,

> the Court holds the corresponding structure for the "logic to convert" limitation of Claim 12 to be "a general-purpose processor, special-purpose processor, or logic circuit programmed to form control signal bytes into data packets that include (1) a header field indicating the type of the packet, and (2) a control field identifying whether the packet is carrying data or a command, and equivalents thereof." The reverse is true for Claim 19, for which the Court holds the corresponding structure is "a general-purpose processor, special-purpose processor, or logic circuit programmed to (1) identify the packet type from a header of a received packet, and (2) identify whether the packet is data or a command from a control field of the received packet, and equivalents thereof."

*Lenovo*, Dkt. 79-2 at 28.

Dell argues that this construction merely restates the function associated with the limitation without disclosing an algorithm. *Noah*, 675 F.3d at 1316-17 ("[P]urely functional language, which simply restates the function associated with the means-plus-function limitation, is insufficient to provide the required corresponding structure."). UCT replies that *Lenovo* both identified the relevant structures and included the necessary steps for performing the "logic to convert" functionality in the claims. The Court agrees with the well-supported analysis in *Lenovo* and adopts those constructions of the "logic to convert" claims for the reasons explained in that order.

11

### 3. "Logic to arbitrate"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **'520 Patent**, asserted claims 12 and dependent claims 13, 15, 18; asserted claim 19 and dependent claim 25<br><br>"logic to arbitrate use of the first control bus, the logic to arbitrate use being operable to:<br>determine whether the control bus is in use by the receiving device, and<br><br>if the first control bus is not in use by the receiving device, conduct arbitration for control of the first control bus" (claim 12)<br><br>"logic to arbitrate use of the first control bus, the logic to arbitrate use being operable to:<br><br>determine whether the control bus is in use by the transmitting device, and<br><br>if the first control bus is not in use by the transmitting device, conduct arbitration for control of the first control bus" (claim 19) | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** to arbitrate use of the first control bus, the logic to arbitrate use being operable to: [i] determine whether the control bus is in use by the receiving device [/ transmitting device], and [ii] if the first control bus is not in use by the receiving device [/ transmitting device], conduct arbitration for control of the first control bus<br>**Structure:** a general-purpose processor, special-purpose processor, or logic circuit programmed with instructions to perform Steps 304-322 of Figure 3, and equivalents thereof | These terms are means-plus-function limitations under 35 U.S.C. § 112(6)<br>**Function** (claims 12 and 19): arbitrate use of the first control bus by determining whether the control bus is in use by the receiving device [/ transmitting device] and, if the first control bus is not in use by the receiving device [/ transmitting device], conducting arbitration for control of the first control bus.<br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |

Dell argues that UCT's construction, in which hardware is programmed with software that performs an algorithm, is indefinite because the algorithm is indefinite. Dell contends that the step in Box 306 of Fig. 3, which determines the next step based on whether "CBUS [is] idle or unused for $\geq$ n cycles," is indefinite because the specification provides no guidance on the value of *n.* UCT responds that *n*

> simply means that the invention can be implemented by choosing any number of cycles. However, once the chosen number of cycles passes, the same exact arbitration steps (*i.e.*, algorithm) are implemented and the scope of the algorithm is not impacted by whether the arbitration process begins after 2 cycles or 4 cycles, for example.

Dkt. 79 at 15. The '520 Patent "plainly explains that 'n' refers to a 'certain number of cycles,'"

UCT argues, and "the same algorithm and steps are followed in Figure 3 irrespective of the number

that is input as" *n*. Dkt. 83 at 7, 8.



**Fig. 3**

Dkt. 1-17 at 6. Dell argues that Judge Payne did not consider this issue because Lenovo did not

raise it and because the '520 Patent is no longer in *HP*, no court has considered it.

Although Judge Payne did not consider this issue, the Court finds that Dell has not shown it

changes the *Lenovo* analysis. The Court adopts Judge Payne's and UCT's proposed construction.

13

### 4. "Preemption component"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **'905 Patent**, asserted claim 21 and dependent claims 22, 23, 26<br><br>"a preemption component that signals the transmission component to stop transmitting the first packet, transmits a preempt indicator indicating that a second packet is to be transmitted, transmits the second packet, and signals the transmission component to continue transmitting the first packet" | Plain and ordinary meaning. This claim term does not invoke §112(6)<br>Alternatively, should §112(6) apply:<br>**Function:** "signals the transmission component to stop transmitting the first packet, transmits a pre-empt indicator indicating that a second packet is to be transmitted, transmits the second packet, and signals the transmission component to continue transmitting the first packet"<br>**Corresponding structure:** "20:3- 25, Fig. 13 and 20:31-37, Fig. 14 and 20:50-67, and equivalents thereof" | This term is a means-plus-function limitation under 35 U.S.C. § 112(6)<br>**Function:** signaling the transmission component to stop transmitting the first packet, transmitting a preempt indicator indicating that a second packet is to be transmitted, transmitting the second packet, and signaling the transmission component to continue transmitting the first packet<br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |

The term "preemption component" appears only in Claim 21 of the '905 Patent:

21.  A communications device for transmitting packets via a communications link, comprising:

a transmission component that transmits a first packet; and

a ***preemption component*** that signals the transmission component to stop transmitting the first packet, transmits a preempt indicator indicating that a second packet is to be transmitted, transmits the second packet, and signals the transmission component to continue trans mitting the first packet;

wherein packets include in-band symbols and the indicators include one or more out-of-band symbols.

'905 Patent at 39:18-40:7, Dkt. 1-1 at 82.

The parties dispute whether "a preemption component" is a means-plus-function term. The

Court agrees with the *Lenovo* and *HP* decisions that it is not. First, the Court presumes that § 112(f)

does not apply because the claim does not use the word "means." *Williamson*, 792 F.3d at 1349.

Second, the claim recites acts to perform entirely what the recited function would have been.

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1360 (Fed. Cir. 2020). The

Court construes this term in accordance with its plain and ordinary meaning.

### 5. "Identification component"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **'798 Patent**, asserted claim 19 and dependent claims 20-26, 28<br><br>"an identification component that identifies a packet type of a packet of symbols" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** identifies a packet type of a packet of symbols<br>**Structure:** "a general-purpose processor, special-purpose processor, or logic circuit programmed to determine whether the packet was removed from a control queue or a data queue, and send an indication of whether the packet was removed from the control queue or the data queue to the transport layer" | This term is a means-plus-function limitation under 35 U.S.C. § 112(6)<br>**Function:** Identifying a packet type of a packet of symbols<br>**Corresponding structure:** Because the patent fails to disclose adequate corresponding structure, this limitation is indefinite |

Once again, the parties now do not dispute that this is a means-plus-function claim. The

"identification component" term appears in claim 19 of the '798 Patent:

> 19. A communications device for transmitting packet types of packets, comprising:
>
> > *an identification component that identifies a packet type of a packet of symbols*; and
> >
> > a transmission component that transmits a synchronization symbol that corresponds to the identified packet type, the transmitted synchronization symbol providing synchronization information and each packet type having a different synchronization symbol and permitting an external receiving node to properly align with a synchronization primitive to be correctly aligned on a symbol boundary, and that transmits the symbols of the packet.

'798 Patent at 38:22-33, Dkt. 1-10 at 80.

Judges Payne and Wise relied on Figure 12 to identify the corresponding structure that

"identifies a packet type of a packet of symbols."



***Fig. 12***

Dkt. 1-10 at 16. Consistent with *Lenovo* and *HP*, the Court construes the term "an identification component that identifies a packet type of a packet of symbols" as having the function of "identifies a packet type of a packet of symbols and the structure of "a general-purpose processor, special-purpose processor, or logic circuit programmed to determine whether the packet was removed from a control queue or a data queue, and send an indication of whether the packet was removed from the control queue or the data queue to the transport layer."

### 6. "Application data and control bits"

This term was not construed in *Lenovo* or *HP*. It is used throughout the '307 Patent, beginning with the abstract reciting:

> A communication system including two endpoints (transceivers or a transmitter and receiver) and a serial link between them. At least one endpoint is configured to generate encoded data in accordance with a line code and to transmit the encoded data over the link. The line code specifies a block code for encoding cells of ***application data and control bits***, and typically also special characters that do not match bit sequences of encoded cells.

Dkt. 1-7 at 2.

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **'307 Patent**, all asserted claims<br><br>"application data and control bits" | No construction necessary | The application data and control bits are not encoded as special characters |

UCT contends that no construction is necessary, while Dell argues that this is insufficient, citing *O2 Micro*, 521 F.3d at 1361. Relying on the specification and prosecution history, Dell proposes a construction specifying that the application data and control bits are not encoded as special characters.

The Court agrees that the claims, specification, and prosecution history support Dell's proposed construction. In particular, in its preliminary response to a petition for inter partes review ("IPR") filed by HP, Dell, and Lenovo, UCT explained that "special characters" are distinguished from "application data and control bits":



IPR2024-01429
U.S. Patent No. 7,187,307

FIG. 1

EX1001, Fig. 1; EX2001 at ¶¶19-22. The packetizing circuitry at the transmitter generates sequences of input words indicative of application data and control bits. EX 1001, Figs 1 and 2, 10:20-39, 10:46-49; EX2001 at ¶22. The encoding circuitry at the transmitter encodes the input words into a sequence of code words according to a block code specified by a line code. EX 1001, Fig. 2, 11:45-47, 11:66-12:2; EX2001 at ¶22. The line code also specifies certain special characters which are distinguished from the code words. EX1001, 10: 46-51; EX2001 at ¶22. These special characters are also transmitted over the link, but they are not encoded with the codewords. EX2001 at ¶22.

Dkt. 77-14 at 5.

UCT contends that Dell seeks to import extraneous limitations into the construction, arguing: "While 'special characters' may be separate from 'application and control bits' in some exemplary embodiments, that does not mean that the 'application and control bits' must always be separate and cannot be encoded as 'special characters.'" Dkt. 83 at 12. UCT also argues that the patent's independent claims should not be narrowed by importing "special characters" found only in the dependent claims.

But, as Dell argues, "application data and control bits" and "special characters" are separate claim elements "and every claim is consistent with the specification's teaching that the former are not encoded as the latter." Dkt. 81 at 19. There is no teaching in the intrinsic record to the contrary, and that is consistent with the plain meaning of the terms in the art. *Id*. at 18. For these reasons, the Court adopts Dell's proposed construction.

### 7.  "AV sink / source operation mode"

This term was not construed in *Lenovo* or *HP*. The '265 Patent, a "method, apparatus and system for transitioning an audio/video device between a source mode and a sink mode," recites AV source and sink operation modes for providing AV information to and receiving AV information from another device, respectively.

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
| --- | --- | --- |
| **'265 Patent**, all asserted claims<br><br>"AV sink operation mode" and "AV source operation mode" | Plain and ordinary meaning. No further construction necessary | A mode in which the AV device receives (but does not provide) power and receives (but does not send) data |

The Court agrees with UCT that "[b]ecause the claims already delineate the required functionality for the recited 'AV sink operation mode' and 'AV source operation mode,' the plain and ordinary meaning controls and no construction is necessary." Dkt. 79 at 25. No clarification is necessary, and the Court construes these terms according to their plain and ordinary meaning.

18

### 8. "Mobile device"

This term also was not construed in *Lenovo* or *HP*.

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **'520 Patent**, all asserted claims & **'231 Patent**, claim 14<br><br>"mobile device" | "any mobile electronic device" | A cellular telephone, smartphone, PDA (personal digital device), MP3 or other format music player, digital camera, video recorder, digital storage device, and other similar devices (i.e. portable devices smaller than a standard device such as a personal computer or monitor) |

The crux of this dispute is whether "mobile device" as used in the '520 and '231 Patents, both filed in 2008, includes personal computers and monitors. During the *Markman* hearing, counsel for Dell stated that this dispute is significant because personal computers and monitors are "the vast majority of accused products." UCT argues that Dell's construction would improperly narrow the universe of "mobile devices."

The patents define "mobile device" as follows:

> "***Mobile device***" means any mobile electronic device. The term '*mobile device*' includes, but it not limited to, a cellular telephone, smartphone, PDA (personal digital device), MP3 or other format music player, digital camera, video recorder, digital storage device, and other similar devices."

'520 Patent at 2:36-40, Dkt. 1-17 at 13; '231 Patent at 2:50-54, Dkt. 1-21 at 15. They mention personal computers only once, distinguishing them from "portable devices." '520 Patent at 2:61-3:2, Dkt. 1-17 at 13-14; '231 Patent at 3:3-12, Dkt. 1-21 at 16 (stating that the HDMI-M device may . . . utiliz[e] USB-OTG [], a standard for portable devices that allows dual-mode operation in which a device may be connected to a personal computer or to another portable device"). The '231 Patent also identify monitors as "standard" rather than mobile devices.'231 Patent at 2:65-3:1, Dkt. 1-21 at 15-16.

19

As modified during the hearing, Dell's proposed construction is: "Any mobile electronic device including but not limited to a cellular telephone, smartphone, PDA (personal digital device), MP3 or other format music player, digital camera, video recorder, digital storage device, and other similar devices (i.e. portable devices smaller than a standard device such as a personal computer or monitor)." The Court finds that this construction is consistent with the teaching in the patents.

**9. "Standard / modified protocol"**

As shown in the excerpts above, all asserted claims of the '520 Patent use the terms "standard protocol" and "modified protocol." UCT proposes the *Lenovo* constructions, while Dell proposes limiting these claims to protocols in effect at the time of invention, citing *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005).

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **'520 Patent**, all asserted claims<br><br>"standard protocol" | "a standardized communication protocol" | A communication protocol that was standardized as of the January 4, 2008 filing date of the '520 patent. A device utilizing the standard protocol communicates over multiple control buses |
| **'520 Patent**, all asserted claims<br><br>"modified protocol" | "a modification of the standard protocol that is not included in the standard protocol" | A communication protocol that is a modification of the standard protocol, that was defined as of the January 4, 2008 filing date of the '520 patent. A device utilizing the modified protocol communicates over one (and only one) control bus |

In *Lenovo*, Judge Payne rejected the argument Dell makes here, reasoning:

> The key difference from *PC Connector* is the temporal frame of reference between the two terms. Here, "standard" is not used by itself, but rather in juxtaposition to "modified," and the use of the latter in combination with the former emphasizes that what matters in these claims is not the protocol itself, but the difference between the two related versions of the same protocol. In other words, unlike the patent at issue in *PC Connector*, the specifics of any protocol are unimportant to the claim. Accordingly, the Court holds the use of "standard protocol" and "modified protocol" are not limited to protocols in existence on the filing dates of the patent and construes these terms as "a standardized communication protocol" and "a modification of the standard protocol that is not included in the standard protocol," respectively.

Dkt. 79-2 at 43-44. Similarly, UCT argues that "the claims and specification use the term 'modified protocol' as a relative term in comparison to a 'standard protocol,' which is not inherently time-limited." Dkt. 79 at 28.

The number of control buses for each protocol, addressed in the second sentence of each of Dell's proposed constructions, was not raised in *Lenovo*. Dell argues that UCT defined the number of control buses as "characteristic" of each protocol in the IPR. Dkt. 77-28 at 3-4. UCT responds that Dell identifies no lexicography or disavowal supporting its limitations. Dkt. 79 at 30.

Alone among the terms construed in *Lenovo*, this Magistrate Judge does not construe the temporal issue consistently with that decision or accept UCT's argument that "standard" and "modified" have meaning only in relationship to each other. The Federal Circuit has consistently held that a claim's meaning "must be interpreted as of its effective filing date." *PC Connector*, 406 F.3d 1359, 1363; *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1358 (Fed. Cir. 2017) ("The purpose of claim construction is to give claim terms the meaning understood by a person of ordinary skill in the art at the time of invention."); *BillJCo, LLC v. Cisco Sys., Inc.*, No. 2:21-cv-00181-JRG, 2022 WL 782740, at *5 (E.D. Tex. Mar. 14, 2022) (collecting cases).

But the Court does agree with UCT that its argument in the IPR that the number of control buses is a "characteristic" of each protocol is not a "clear and unmistakable" disclaimer. *3M Innovative Props.*, 725 F.3d at 1326. While Dell may attempt to prove that the relevant "standard" and "modified" protocols have multiple buses or only one bus, respectively, the '520 Patent is not limited to those embodiments.

Accordingly, the Court construes "standard protocol" as "a communication protocol that was standardized as of the January 4, 2008 filing date of the '520 patent" and "modified protocol" as "a communication protocol that is a modification of the standard protocol, that was defined as of the January 4, 2008 filing date of the '520 patent."

**10. "The modified protocol being a modification of . . . "**

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
| --- | --- | --- |
| **'520 Patent**, all asserted claims<br><br>"the modified protocol being a modification of the standard protocol that is not included in the standard protocol" | No construction necessary | Indefinite |

This term was not construed in *Lenovo* or *HP*, and the parties offer conflicting expert evidence whether it would confuse a POSITA. UCT's expert, Dr. Vijay Madisetti, opines that the specifications show the phrase is well-understood by a POSITA, describing the HDMI protocol as an exemplary "standard protocol" and USB as an exemplary "modified protocol" over which HDMI communications can occur. Dkt. 79-3 ¶¶ 73-75. Dell responds that "a POSITA would not understand USB to be 'a modification of' HDMI, which was developed ***after*** and independently from USB." Dkt. 77 at 35. Dell's expert, Steve Novak, explains in detail why the disputed phrase "recites two incompatible requirements of the 'modified protocol.'" Dkt. 77-8 ¶ 311; *see also id.* at ¶¶ 306-22.

The Court agrees with Dell that the term "the modified protocol being a modification of the standard protocol that is not included in the standard protocol" is indefinite "because a POSITA cannot reasonably ascertain what it means for one protocol to be both 'a modification of' and 'not included in' a second protocol or what qualifies as a sufficient modification." Dkt. 81 at 23.

**11. "First physical channel"**

Finally, the Court addresses another disputed term not construed in *Lenovo* or *HP*.

| | Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
| --- | --- | --- | --- |
| 11 | **'103 Patent**, all asserted claims<br><br>"first physical channel" | "a physical path for transmitting electrical signals" | A Transition-Minimized Differential Signaling (TMDS) channel |

The '103 Patent claims recite two physical channels: a "first physical channel" for video data and USB data and a "distinct" "second physical channel" for control data. Dkt. 1-24. The specification describes the "first physical channel" only as a "transition-minimized differential signaling (TMDS) channel." *See, e.g.*, '103 Patent at Figs. 1, 5, Dkt. 1-24 at 4, 8:



FIG. 1



FIG. 5

Dell contends that there was a prosecution disclaimer by the applicant who "described the invention as a TMDS channel" in an interview with the examiner before allowance, Dkt. 77-31 at 9, and that the examiner allowed the claims based on the TMDS channel requirement, *id.* at 31, 33

23

("The primary reason for allowance of claims 1, 12, 23 and 24 in the instant application is that ***prior arts do not teach a TMDS channel*** that's transmitting video in only one direction and transmitting USB data bidirectionally at a higher bandwidth.") (emphasis added). UCT argues that the '103 Patent never limits the first physical channel to only a TMDS channel and that the patent applicant never made a clear and unmistakable disclaimer.

At the *Markman* hearing, the parties agreed that *Aylus* provides the proper analysis for this dispute:

> Prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega*, 334 F.3d at 1323. "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325-26. "Thus, when the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). Such disclaimer can occur through amendment or argument. *See Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985). In *Standard Oil*, we explained, in the context of disclaimer, that the prosecution history "includes all express representations made by or on behalf of the applicant to the examiner to induce a patent grant . . . includ[ing] amendments to the claims and arguments made to convince the examiner." *Id.* . . . Ultimately, the doctrine of prosecution disclaimer ensures that claims are not "construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).

*Aylus*, 856 F.3d at 1359-60.

The parties agree, as they must, that "it is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims." *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1379 (Fed. Cir. 2005) (citation omitted). And the Court agrees with UCT that the applicant's silence in response to the examiner's unilateral reasons for allowance cannot, "without more," amount to a clear and unmistakable disavowal of claim scope. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005).

The question is whether Dell is correct in arguing that the applicant's own description of the invention as a TDMS channel in an interview summarized by the examiner is sufficient to constitute a disclaimer. Having carefully considered the cases the parties cite, the Court applies Federal Circuit precedent to find that the record shows the examiner and the applicant understood the "first physical channel" to be a TMDS channel. *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003) ("Although there is no obligation to respond to an examiner's state of Reasons for Allowance, and the statement of an examiner will not necessarily limit a claim, in this case the examiner simply repeated the arguments that the patentee had presented.") (citation omitted). For these reasons, the Court finds that the applicant made a clear and unmistakable disclaimer and adopts Dell's construction.

## B. Conclusion

The Court adopts the below constructions as its final constructions.

| | Disputed Term | Court's Ruling |
|---|---|---|
| 1A | **'231 Patent**, claim 10 and dependent claims 11-14<br><br>"logic to detect signals on the cable interface" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** detect signals on the cable interface<br>**Structure:** The corresponding structure is defined by the subparts of the limitation |
| 1B | **'231 Patent**, claim 10 and dependent claims 11-14<br><br>"a first logic to detect a voltage value on the power bus…" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** detect a voltage value on the power bus<br>**Structure:** a voltage detector with an input connected to the pin of the transmitter that is connected to the power bus, and equivalents thereof |
| 1C | **'231 Patent**, claim 10 and dependent claims 11-14<br><br>"a second logic to detect signals on the control bus…" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** detect signals on the control bus<br>**Structure:** a voltage detector with an input connected to the pin of the transmitter that is connected to the control bus, and equivalents thereof |
| 1D | **'231 Patent**, claim 16 and dependent claims 17, 18<br><br>"logic to discover a transmitting device coupled with the receiving device" | Subject to 35 U.S.C. § 112 ¶ 6<br>The corresponding structure is defined by the subparts of the limitation |

| | Disputed Term | Court's Ruling |
|---|---|---|
| 1E | **'231 Patent**, claim 16 and dependent claims 17, 18<br><br>"a first logic to detect a first signal on the control bus" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** detect a first signal on the control bus<br>**Structure:** a voltage detector with an input connected to the pin of the receiver that is connected to the control bus, and equivalents thereof |
| 1F | **'231 Patent**, claim 16 and dependent claims 17, 18<br><br>"a second logic to detect a power signal from the transmitting device…" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** detect a power signal from the receiving [transmitting] device1<br>**Structure:** a voltage detector with an input connected to the pin of the receiver that is connected to a power signal line, and equivalents thereof |
| 2A | **'520 Patent**, asserted claim 12 and dependent claims 13, 15, 18<br><br>"logic to convert each of one or more control signals into a data packet" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** convert each of one or more control signals into a data packet, each of the one or more control signals being one of a plurality of different types of control signals for a standard protocol, each data packet including a plurality of bits to be transmitted<br>**Structure:** a general-purpose processor, special-purpose processor, or logic-circuit programmed to form control signal bytes into data packets that include (1) a header field indicating the type of the packet, and (2) a control field identifying whether the packet is carrying data or a command, and equivalents thereof |
| 2B | **'520 Patent**, asserted claim 19 and dependent claim 25<br><br>"logic to convert each of the one or more data packets into a control signal" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** convert each of the one or more data packets into a control signal<br>**Structure:** a general-purpose processor, special-purpose processor, or logic circuit programmed to (1) identify the packet type from a header of a received packet, and (2) identify whether the packet is data or a command from a control field of the received packet, and equivalents thereof |

| | Disputed Term | Court's Ruling |
|---|---|---|
| 3 | **'520 Patent**, asserted claims 12 and dependent claims 13, 15, 18; asserted claim 19 and dependent claim 25<br><br>"logic to arbitrate use of the first control bus, the logic to arbitrate use being operable to:<br> determine whether the control bus is in use by the receiving device, and<br><br>if the first control bus is not in use by the receiving device, conduct arbitration for control of the first control bus" (claim 12)<br><br>"logic to arbitrate use of the first control bus, the logic to arbitrate use being operable to:<br><br>determine whether the control bus is in use by the transmitting device, and<br><br>if the first control bus is not in use by the transmitting device, conduct arbitration for control of the first control bus" (claim 19) | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** to arbitrate use of the first control bus, the logic to arbitrate use being operable to: [i] determine whether the control bus is in use by the receiving device [/ transmitting device], and [ii] if the first control bus is not in use by the receiving device [/ transmitting device], conduct arbitration for control of the first control bus<br>**Structure:** a general-purpose processor, special-purpose processor, or logic circuit programmed with instructions to perform Steps 304-322 of Figure 3, and equivalents thereof |
| 4 | **'905 Patent**, asserted claim 21 and dependent claims 22, 23, 26<br><br>"a preemption component that signals the transmission component to stop transmitting the first packet, transmits a preempt indicator indicating that a second packet is to be transmitted, transmits the second packet, and signals the transmission component to continue transmitting the first packet" | Plain and ordinary meaning |

| | Disputed Term | Court's Ruling |
|---|---|---|
| 5 | **'798 Patent**, asserted claim 19 and dependent claims 20-26, 28<br><br>"an identification component that identifies a packet type of a packet of symbols" | Subject to 35 U.S.C. § 112 ¶ 6<br>**Function:** identifies a packet type of a packet of symbols<br>**Structure:** a general-purpose processor, special-purpose processor, or logic circuit programmed to determine whether the packet was removed from a control queue or a data queue, and send an indication of whether the packet was removed from the control queue or the data queue to the transport layer |
| 6 | **'307 Patent**, all asserted claims<br><br>"application data and control bits" | The application data and control bits are not encoded as special characters |
| 7 | **'265 Patent**, all asserted claims<br><br>"AV sink operation mode" and "AV source operation mode" | Plain and ordinary meaning |
| 8 | **'520 Patent**, all asserted claims & **'231 Patent**, claim 14<br><br>"mobile device" | Any mobile electronic device including but not limited to a cellular telephone, smartphone, PDA (personal digital device), MP3 or other format music player, digital camera, video recorder, digital storage device, and other similar devices (i.e., portable devices smaller than a standard device such as a personal computer or monitor) |
| 9A | **'520 Patent**, all asserted claims<br><br>"standard protocol" | A communication protocol that was standardized as of the January 4, 2008 filing date of the '520 patent |
| 9B | **'520 Patent**, all asserted claims<br><br>"modified protocol" | A communication protocol that is a modification of the standard protocol, that was defined as of the January 4, 2008 filing date of the '520 patent |
| 10 | **'520 Patent**, all asserted claims<br><br>"the modified protocol being a modification of the standard protocol that is not included in the standard protocol" | Indefinite |
| 11 | **'103 Patent**, all asserted claims<br><br>"first physical channel" | A Transition-Minimized Differential Signaling (TMDS) channel |

28

**IT IS FURTHER ORDERED** that this case be removed from this Magistrate Judge's docket and returned to the docket of the Honorable Robert Pitman.

**SIGNED** on January 26, 2026.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE