IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., | § § § | |
| Plaintiff, | § § § | |
| v. | § § § § | 1:23-CV-1506-RP |
| DELL TECHNOLOGIES INC. and DELL INC., | § § § § | |
| Defendants. | § § | |

**ORDER**

On July 2, 2024, the Court referred claim construction in this case to United States

Magistrate Judge Susan Hightower for disposition. (Referral Order, Dkt. 36). On November 20,

2025, the United States Magistrate Judge docketed a preliminary claim construction order, (Dkt. 87),

and on November 24, 2025, held a Markman Hearing, (Dkt. 91). She entered the Claim

Construction Order on January 26, 2026. (Claim Constr. Order, Dkt. 93). On February 9, 2026,

Defendants Dell Technologies Inc. and Dell Inc. (collectively, "Dell") filed an appeal of the Claim

Construction Order, (Dkt. 94), as did Plaintiff Universal Connectivity Technologies ("UCT"),[1] (Dkt.

95). Dell responded to UCT's appeal, (Dkt. 96), and UCT responded to Dell's appeal, (Dkt. 97).

Having reviewed the Claim Construction Order, the briefings, and the relevant law, the Court issues

the following order.[2] Additionally, to the extent the Magistrate Judge's finding of indefiniteness for

---

[1] UCT filed its appeal as "objections" to the Claim Construction Order. (UCT Appeal, Dkt. 95). Because UCT is technically appealing nondispositive portions of the claim construction order, the Court instead construes UCT's filing as an appeal. *See* W.D. Tex. Loc. R. App'x C, Rule 4(a); *SciCo Tec GmbH v. Boston Scientific Corp.*, 599 F. Supp. 2d 741, 742 (E.D. Tex. 2009) (explaining a Magistrate Judge's claim construction order is a nondispositive pretrial matter).

[2] The patents at issue in this case are U.S. Patent No. 7,154,905 ("the '905 Patent"); No. 7,187,307 ("the '307 Patent"); No. 7,746,798 ("the '798 Patent"); No. 9,232,265 ("the '265 Patent"); No. 8,680,712 ("the '712 Patent"); No. 7,856,520 ("the '520 Patent"); No. 7,921,231 ("the '231 Patent"), and No. 9,852,103 ("the '103 Patent").

Term 10 in the '520 Patent is dispositive, the Court will review it as a report and recommendation. (*See* Dell Objs., Dkt. 94, at 15).

## I. LEGAL STANDARDS

### A. Review of Nondispositive Order

A district judge may reconsider any pretrial matter determined by a magistrate judge where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). *See also* W.D. Tex. Loc. R. App'x C, Rule 4(a). District courts apply a "clearly erroneous" standard when reviewing a magistrate judge's ruling under the referral authority of that statute. *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). The clearly erroneous or contrary to law standard of review is "highly deferential" and requires the court to affirm the decision of the magistrate judge unless, based on the entire evidence, the court reaches "a definite and firm conviction that a mistake has been committed." *Gomez v. Ford Motor Co.*, No. 5:15-CV-866-DAE, 2017 WL 5201797, at *2 (W.D. Tex. Apr. 27, 2017) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The clearly erroneous standard "does not entitle the court to reverse or reconsider the order simply because it would or could decide the matter differently." *Id.* (citing *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)).

### B. Review of Report and Recommendation

Pursuant to 28 U.S.C. § 636(b), a party may serve and file specific, written objections to a magistrate judge's proposed findings and recommendations within fourteen days after being served with a copy of the report and recommendation and, in doing so, secure de novo review by the district court. When no objections are timely filed, a district court can review the magistrate's report and recommendation for clear error. See Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the [district] court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

## II. DISCUSSION

### A. Dell's Objections (Dkt. 94)

### 1. "logic to discover" / "logic to detect" ('231 Patent)

The Magistrate Judge agreed with United States Magistrate Judge Roy Payne's construction of "logic to discover" and "logic to detect," recited in Claims 10 and 16 of the '231 Patent, as provided in *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-cv-00449-JRG ("*Lenovo*"), Dkt. 204 (E.D. Tex. Sept. 16, 2025) (Payne, J.).[3] Dell contends that the Magistrate Judge's determination that Terms 1A-F "include corresponding structures ('voltage detectors[]') not disclosed anywhere in the patent" is erroneous for two reasons. (Dell Objs., Dkt. 94, at 5).

First, Dell points to the Claim Construction Order stating that "**the claims** recite a 'sufficiently definite structure' to adequately perform the claimed function." (*Id.* at 6 (quoting Claim Contr. Order, Dkt. 93)) (emphasis in Dell's Objs.). Dell argues that, since these are means-plus-function limitations under § 112(6), "the claims cannot supply the missing voltage detector, [as] claim limitation is subject to § 112(6) only where the claim does not recite sufficient structure to perform the function." (*Id.*). Dell's statement of the law is correct,[4] but its argument ignores the surrounding context of the Magistrate Judge's reasoning; she pointed to Judge Payne's finding that "there is not a 'total absence of structure' *in the specification*," and quoted his explanation for why "*the specification* is clear that the 'logic' is part of the transmitter." (Claim Constr. Order, Dkt. 93, at 8–9 (quoting *Lenovo*, No. 2:23-cv-00449-JRG, at \*32)) (emphasis added). This argument therefore does not identify clear error.

Second, Dell argues that the Magistrate Judge applied the wrong standard:

---

[3] The *Lenovo* Claim Construction Order is located in the instant case's docket at Dkt. 79-2.

[4] *See Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022) (citing *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir. 2015)) ("If . . . we conclude that the limitation is in means-plus-function format, we perform the second step of determining 'what structure, if any, disclosed in the *specification* corresponds to the claimed function.'") (emphasis added).

> Second, the Order states that "[a]s Judge Payne explained [in a co-pending case], there is not a 'total absence of structure' in the specification, distinguishing this case from *Default Proof*, 412 F.3d at 1302." Order at 9. But this applies the wrong standard, based on an out-of-context quote from *Default Proof.* The proper test is not whether the patent has a total absence of **any** structure. A § 112(6) term is definite only if the patent discloses **adequate structure** that is **clearly linked** to the recited function. *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F. 3d 1205, 1211-12 (Fed. Cir. 2003); *Default Proof*, 412 F.3d at 1298.

(Dell Objs., Dkt. 94, at 7) (emphasis in original). The Court again disagrees that Dell has identified clear error. "The requirement that the claims 'particularly point[ ] out and distinctly claim[ ]' the invention is met when a person experienced in the field of the invention would understand the scope of the subject matter that is patented when the claim is read in conjunction with the rest of the specification." *Med. Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003) (quoting *S3, Inc. v. nVIDIA Corp.,* 259 F.3d 1364, 1367 (Fed. Cir. 2001)). The Magistrate Judge cited to Judge Payne's finding that, given the "disclosure and the figures," particularly Figure 8 and corresponding specification disclosure, "a skilled artisan would understand the 'logic to detect' to be a voltage detector internal to the transmitter chip and connected to an input pin of the transmitter." (Claim Constr. Order, Dkt. 93, at 8–9 (quoting *Lenovo*, Dkt. 79-2, at 33)). Dell has therefore failed to show clear error or that the Magistrate Judge ruled contrary to law regarding the terms "logic to discover" or "logic to detect."

### 2. "logic to convert" ('520 Patent)

Regarding the "logic to convert" terms in claims 12 and 19 of the '520 Patent, the Magistrate Judge reviewed Judge Payne's constructions of the same claims; after finding he utilized "well-supported analysis," she adopted his constructions "for the reasons explained in that order." (*Id.* at 11 (citing *Lenovo*, Dkt. 79-2, at 28)). Dell now argues in its Objections, as it did in its claim construction briefing,[5] that Judge Payne's construction "simply restates the functional language of

---

[5] (*See* Claim Constr. Order, Dkt. 93, at 11 ("Dell argues that this construction merely restates the function associated with the limitation without disclosing an algorithm.")).

the claim and lacks the step-by-step procedure required to satisfy § 112(6) with disclosure of an algorithm." (Dell Objs., Dkt. 94, at 9). However, "[a]n algorithm may be expressed 'in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.'" *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012). Based on Judge Payne's review of Figures 7, 8, and 9 of the '520 Patent in combination with relevant portions of the '520 Patent's specification, (*e.g.*, '520 Patent, Dkt. 77-4, at 3:34–37; 7:25–31), (*Lenovo*, Dkt. 79-2, at 25–28), which the Magistrate Judge adopted, the Court finds that it was not clear error or contrary to law for the Magistrate Judge to find adequate structures corresponding to the "logic to convert" in claims 12 and 19.

### C. "logic to arbitrate" ('520 Patent)

Regarding the "logic to arbitrate" terms, Dell asserts that the "only dispute before the Court has been whether that algorithmic structure itself is indefinite, because it includes a test based on comparison to a threshold of undefined value, 'n' (Fig. 3, Box 306: 'CBUS [is] idle or unused for $\geq$ n cycles')." (Dell Objs., Dkt. 94, at 10). Dell claims that the Magistrate Judge erred by finding that "'logic to arbitrate' as construed is not indefinite" and by "improperly rewrit[ing] the claims to add a new limitation: someone must **choose** the number of cycles." (*Id.* at 10–11) (emphasis in original). Based on the '520 Patent's teaching that "[i]f it is determined that the CBUS is idle (having been unused for a **certain number** of cycles) or has been unused by the other device for a **certain number** of cycles . . . then the use of the bus may be arbitrated," ('520 Patent, Dkt. 77-4, at 7:54–58) (emphasis added), and given that the "same algorithm and steps are followed in Figure 3 irrespective of the number that is input as 'N,'" (UCT Surreply, Dkt. 83, at 8), the Magistrate Judge did not clearly err or rule contrary to law by adopting Judge Payne's and UCT's proposed construction.

### D. "a preemption component" ('905 Patent)

Dells contends that the Magistrate Judge erred in finding that the term "a preemption component" in the '905 Patent is not a means-plus-function element under § 112(6). (Dell Objs., Dkt. 94, at 11). The Magistrate Judge reasoned that the § 112(f) presumption does not apply because the word "means" is not used in the claim and because the claim "recites acts to perform entirely what the recited function would have been." (Claim Constr. Oder, Dkt. 93, at 14–15). First, regarding the presumption that § 112(f) does not apply, that presumption "[could] be rebutted if the evidence intrinsic to the patent and any relevant extrinsic evidence so warrant." *Personalized Media Commun., LLC v. Intl. Trade Comm'n*, 161 F.3d 696, 704 (Fed. Cir. 1998). Dell does not cite sufficient intrinsic or extrinsic evidence to rebut the presumption, and courts in this Circuit have found that the word "component . . . bears a structural limitation." *See Lodsys, LLC v. Bro. Intern. Corp.*, No. 2:11-CV-00090-JRG, 2013 WL 2949959, at *44 (E.D. Tex. June 14, 2013). And, as Judge Payne explained, although "reciting a 'component for' performing some function" is a classic means-plus-function form, claim 21 instead recites "acts within the claim itself to perform entirely the recited function," such that § 112(g) does not apply. *Lenovo*, Dkt. 79-2, at 17 (quoting *Personalized Media Commc'ns, LLC v. I.T.C.*, 161 F.3d 696, 704 (Fed. Cir. 1998)). Judge Wise in the Northern District of California agreed. *See Universal Connectivity Technologies Inc. v. HP Inc.*, No. 24-cv-4097, at *17–18 (N.D. Cal. Nov. 7, 2025) ("*H.P.*") (finding that "[t]o the extent claim 21 encompasses a function, the claim itself recites acts to perform entirely the recited function," and pointing out that claim 21 recites "a preemption component that **signals** the transmission component to stop . . ., **transmits** a preempt indicator . . ., **transmits** the second packet, and **signals** the transmission component to continue") (emphasis in original). Dell has therefore not shown clear error or a ruling contrary to law as to the construction of "preemption component."

### E. "identification component" ('798 Patent)

Dell argues that the term "identification component that identifies a packet type of a packet of symbols" in the '798 Patent is indefinite due to the '798 Patent not disclosing an adequate structure for performing the functions of the "identification component." (Dell Objs., Dkt. 94, at 12–13). Judge Payne in *Lenovo* determined that UCT "had not established 'identification component' is a name for sufficiently definite structure," such that it was a means-plus-function term. *Lenovo*, Dkt. 79-2, at 19. Accordingly, Judge Payne examined whether the specification disclosed a corresponding structure for the "identification component" and found that that it did, first explaining that the "transport layer must perform the identification" and then pointing to Figure 12 of the '798 Patent as "the only disclosure of how to determine"—i.e., identify—"the packet type in the specification." *Id.* at 21. The Court does not find persuasive Dell's argument that the claim language requires the packet type to be identified prior to the packets being retrieved,[6] nor the Court persuaded by its argument that Figure 12 is not a corresponding structure.[7] Dell has not established that the Magistrate Judge clearly erred or ruled contrary to law as to this term.

### F. "AV sink operation mode" and "AV source operation mode" ('265 Patent)

Dell contends that the Magistrate Judge erred by construing the terms "AV sink operation mode" and "AV source operation mode" with their plain and ordinary meaning, rather than giving these terms Dell's construction.[8] (Dell Objs., Dkt. 94, at 13–14). The Magistrate Judge "agree[d] with

---

[6] (*See* UCT Surreply, Dkt. 83, at 11 ("Whether the packet type is also identified *prior* to being retrieved from the control or data queue is irrelevant for determining the relevant structure for the claimed 'identification component' functionality . . . . In other words, whether the claimed 'communications device' also identifies packet types *prior* to removing those packets from the data and control queues is irrelevant to the requirements of the claim, which concern how the identified packet type is communicated to and utilized by the 'transmission component.'") (emphasis in original).

[7] (*See* UCT Surreply, Dkt. 83, at 11 (aptly summarizing the analytical steps taken by Judge Payne before he relied upon Figure 12 to determine the corresponding structure for the "identification component") (citing *Lenovo*, Dkt. 79-2, at 21–22)).

[8] Dell proposed: "A mode in which the AV device receives (but does not provide) power and receives (but does not send) data." (Claim Constr. Order, Dkt. 93, at 18).

UCT that '[b]ecause the claims already delineate the required functionality for the recited "AV sink operation mode" and "AV source operation mode," the plain and ordinary meaning controls and no construction is necessary.'" (Claim Constr. Order, Dkt. 93, at 18). Based on the Court's review of the '295 Patent, and given that "claim terms are generally given their plain-and-ordinary meaning" and "particular embodiments . . . will not generally be read into the claims," the Magistrate Judge did not commit clear error or rule contrary to law by giving these terms their plain and ordinary meaning. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988).

### G. "standard protocol" / "modified protocol" ('520 Patent)

The Magistrate Judge determined that the terms "standard protocol" and "modified protocol" must be interpreted as of their effective filing date, which Dell does not object to. (Dell Objs., Dkt. 94, at 14; Claim Constr. Order, Dkt. 93, at 20–21). Dell does object to the Magistrate Judge's subsequent conclusion that the number of control buses should not be included in the terms' construction, finding that there is no lexicography or clear and unmistakable disavowal supporting Dell's suggested limitations. (Dell Objs., Dkt. 94, at 14–15; Claim Constr. Order, Dkt. 93, at 21). Dell points to UCT's prior statements during the patent's prosecution that "the number of control buses is a 'characteristic' of each of the 'standard protocol' and 'modified protocol.'" (Dell Objs., Dkt. 94, at 14–15). The Magistrate Judge found that calling the number of control buses "'characteristic' of each protocol' is not a 'clear and unmistakable' disclaimer." (Claim Constr. Order, Dkt. 93, at 21). The Court agrees that this language is not a clear and unmistakable disclaimer and that the patent term should not be improperly limited to any embodiments,[9] such that the Magistrate Judge did not clearly err or rule contrary to law.

---

[9] *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").

**B. UCT's Objections (Dkt. 95)**

**1. "application data and control bits" ('307 Patent)**

The Magistrate Judge gave the term "application data and control bits" Dell's proposed construction: "The application data and control bits are not encoded as special characters." (Claim Constr. Order, Dkt. 93, at 17). UCT objects, contending that the term should have been given its plain and ordinary meaning and that no construction is necessary. (UCT Objs., Dkt. 95, at 1–2). UCT asserts that "[n]either Dell nor the Court identified any disclaimer or lexicography that justifies limiting the plain and ordinary meaning of the term as the Court did in its construction." (*Id.* at 2). But, as the Magistrate Judge pointed out, "'application data and control bits' and 'special characters' are separate claim elements." (Claim Constr. Order, Dkt. 93, at 18). "[D]ifferent claim terms are presumed to have different meanings." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) (first citing *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006); and then citing *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)). UCT does not provide the Court with evidence to rebut this presumption, nor does it contest the Magistrate Judge's finding that Dell's construction is consistent with the plain meaning of the term to a person of ordinary skill in the art.[10] UCT has therefore not shown that the Magistrate Judge's construction was clear error or contrary to law.

**2. "first physical channel" ('103 Patent)**

The '103 Patent teaches two physical channels, including a "first physical channel" for video data and USB data. (Claim Constr. Order, Dkt. 93, at 23). Based on a prosecution disclaimer, the Magistrate Judge concluded that the "first physical channel" must be construed as a "transition-

---

[10] "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

minimized differential signaling (TMDS) channel," in line with Dell's proposed construction. (*Id.* at 23–25). UCT argues that the term should have been given its plain and ordinary meaning and that the '103 Patent and its prosecution history do not support a disclaimer. (UCT Objs., Dkt. 95, at 2).

The Magistrate Judge carefully reasoned that the patent examiner's reason for allowing the claim—that "the prior arts do not teach a TMDS channel"—was not enough on its own to find a disclaimer, but that the '103 Patent applicant's own description of "the invention as a TMDS channel that's transmitting video and audio data" was enough to find a clear and unmistakable disavowal of claim scope. (*Id.* at 24–25; Applicant Interview Summary, Dkt. 77-31, at 9). *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)) (explaining that prosecution history includes "all express representations made by . . . the applicant to the examiner to induce a patent grant . . . includ[ing] amendments to the claims **and arguments made to convince the examiner**") (emphasis added). Additionally, the applicant's description of the "invention" in that interview corresponds with the '103 Patent's specification, which solely describers the "first physical channel" as a TMDS channel. (*See, e.g.*, '103 Patent, Dkt. 1-24, at 4:24–29 ("The transmitter is hardware, firmware, software or a combination thereof for encoding and sending packets of [audio-visual] data and USB data from the source device to a sink device via a TMDS channel of the multimedia link and control data through an eCBUS of the multimedia link."); *id.* at Figs. 1, 5). Accordingly, UCT has failed to show that the Magistrate Judge clearly erred or ruled contrary to law in giving the term "first physical channel" Dell's proposed construction.

### III. REVIEW OF REPORT AND RECOMMENDATION

To the extent the Magistrate Judge's conclusion that the term "the modified protocol being a modification of the standard protocol that is not included in the standard protocol" in the '520

Patent ("Term 10") is indefinite is a dispositive order, the Court reviews it as a report and recommendation.

Because no party has filed timely objections as to Term 10, the Court reviews the report and recommendation for clear error. Having done so and finding no clear error, the Court accepts and adopts the report and recommendation as its own order.

## IV. CONCLUSION

Upon its own review, this Court finds that the Magistrate Judge's order was not clearly erroneous or contrary to law. The Court therefore **AFFIRMS** the Claim Construction Order, (Dkt. 93), and **DENIES** both parties' appeals, (Dkts. 94, 95).

Additionally, **IT IS ORDERED** that, to the extent the Magistrate Judge's finding that Term 10 in the '520 Patent is indefinite is dispositive, the Magistrate Judge's report and recommendation that Term 10 is indefinite, (Dkt. 93, at 22, 28), is **ADOPTED**.

**SIGNED** on July 14, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

11